# IN THE SUPREME COURT OF TEXAS

═══════════
No. 15-0912
═══════════

COLORADO COUNTY, TEXAS, R.H. "CURLY" WIED,
IN HIS OFFICIAL & INDIVIDUAL CAPACITY, PETITIONER,

v.

MARC STAFF, RESPONDENT

═══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS
═══════════════════════════════════════════════════════

**Argued October 4, 2016**

JUSTICE GUZMAN delivered the opinion of the Court.

Chapter 614, Subchapter B of the Texas Government Code provides covered peace officers certain procedural safeguards to help ensure adverse employment actions are not based on unsubstantiated complaints of misconduct.[1] Under Subchapter B, a covered peace officer cannot be disciplined based on a "complaint" unless the complaint is (1) in writing, (2) "signed by the person making the complaint," and (3) presented to the employee "within a reasonable time after the

---

[1] TEX. GOV'T CODE §§ 614.021-.023; *see, e.g.*, *Paske v. Fitzgerald*, 499 S.W.3d 465, 474 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *City of Plainview Tex. v. Ferguson*, No. 07-14-00405-CV, 2016 WL 3522129, at *2 (Tex. App.—Amarillo 2016, pet. filed) (mem. op.); *Harris Cty. Sheriff's Civil Serv. Comm'n v. Guthrie*, 423 S.W.3d 523, 529-30 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *Lang v. Tex. Dep't of Pub. Safety*, No. 03-12-00497-CV, 2014 WL 3562738, at *9 (Tex. App.—Austin 2014, no pet.) (mem. op.).

complaint is filed."[2]  Moreover, ultimate disciplinary action (indefinite suspension or termination) may not be "based on the subject matter of [a] complaint" of misconduct absent an investigation and some supporting evidence.[3]

The statutory-construction issues raised in this employment-termination dispute concern the events necessary to trigger and satisfy Chapter 614, Subchapter B's procedural requirements.  The issues presented include whether Subchapter B's disciplinary procedures apply to at-will employment relationships; whether those procedures apply to any complaint of misconduct or only citizen-generated complaints; and whether a complaint must be signed by the "victim" of the alleged misconduct and presented to the employee some time before discipline is imposed.

We hold that (1) Chapter 614, Subchapter B does not alter the at-will relationship, but prescribes procedures that apply when the employer elects to terminate employment based on a complaint of misconduct rather than terminating at will; (2) the statutory phrase "the person making the complaint" is not limited to the "victim" of the alleged misconduct; and (3) in this case, a signed disciplinary notice provided to the employee contemporaneously with suspension of employment was sufficient to meet Chapter 614, Subchapter B's notice requirements and allowed the officer ample opportunity to defend himself to the final decisionmaker.  We therefore reverse the court of appeals' judgment and render judgment in the employer's favor.

---

[2] TEX. GOV'T CODE §§ 614.022, .023(a)-(b).

[3] *Id.* § 614.023(c).

## I. Background

After serving as a Colorado County Deputy Sheriff for nearly five years, Mark Staff's employment was terminated. Contemporaneously with Staff's dismissal, he received a "Performance Deficiency Notice (Termination)" signed by his supervisor, Lieutenant Troy Neisner (Deficiency Notice). Though the County is an at-will employer with "the right to terminate employment for any legal reason or no reason," the Deficiency Notice identified and provided details about three specific incidents in which Staff's interactions with the public were characterized as "rude," "unacceptable," "unprofessional," "grossly unprofessional," and contrary to departmental policy. Per the Deficiency Notice, these incidents did not constitute a "complete record" of Staff's performance deficiencies or "an exhaustive list of the reasons for [his] termination," but were merely "recent [performance] deficiencies."

While other unspecified performance issues may have impacted the termination decision,[4] the Deficiency Notice identifies the impetus for Staff's dismissal as an internal investigation initiated after County Attorney Ken Sparks informed Sheriff R.H. "Curly" Wied that Staff's behavior during a recorded traffic incident was "inappropriate and needed to be addressed." Sparks suggested the Sheriff review a DVD of dash-cam footage of the event, which Staff had provided to support criminal charges he filed against the motorist. According to Sparks, assistant county attorneys had

---

[4] Though not mentioned in the Deficiency Notice, an "Annual Performance Evaluation" made three years into Staff's tenure as a deputy sheriff states that, during the review period, Staff had been "counseled regarding dealing with citizens in an unprofessional manner" and had "commonly displayed problems making contacts with members of the public."

also viewed the recording and "felt [Staff's] conduct and/or behavior was inappropriate and concerning enough to bring it to his attention."

Sparks gave the DVD to Sheriff Wied, who immediately forwarded it to Lt. Neisner. Lt. Neisner and two other officers, Sergeant Girndt and Sergeant Edman, independently reviewed the video footage. As recounted in the Deficiency Notice, Staff's behavior toward the motorist was "demeaning" and involved "screaming," "taunting," and "apparent rage" that "escalated" the incident and "resulted in an arrest for an accident in which . . . no damage to any vehicle" had occurred. Based on the video depiction of Staff's conduct, "it was determined without question that [Staff's] behavior was unacceptable and unprofessional" on the occasion in question.

As a result of that incident, Lt. Neisner and Sgt. Edman conducted "spot checks" of Staff's dash-cam videos to evaluate his performance and found his behavior to be unacceptable on at least one other occasion. The Deficiency Notice states that, during a traffic stop that occurred shortly before the inciting incident, Staff was "argumentative," "scream[ed]" at a "calm" and "compliant" motorist, repeatedly asked questions that had already been answered, and "continued to escalate the incident higher by threatening to take the subject to jail several times for not cooperating, although there was no evidence of her not cooperating on video." Lt. Neisner and Sgt. Edman deemed Staff's behavior "rude," "unacceptable," and "grossly unprofessional."

In addition to the foregoing events, which occurred in the weeks preceding Staff's termination, the Deficiency Notice recalled a nearly five-year-old incident involving similar behavior. About a month after Staff was hired, he reportedly displayed his badge during an off-duty traffic stop and "cussed, ranted, and raved" at a motorist for "speeding up and slowing down[,]

4

preventing [him] from passing." The Deficiency Notice states that Staff was formally reprimanded for his conduct and admonished that further misconduct could result in termination of employment.

Lt. Neisner informed Staff that all three incidents violated section 22 of the Colorado County Sheriff's Office Policy Manual, *Conduct: Unbecoming an Employee*. Lt. Neisner therefore "recommended" immediate termination of Staff's employment and terminated Staff's employment "effective immediately." However, Lt. Neisner also advised Staff that he had 30 days to appeal the termination to Sheriff Wied for a "final" decision on the matter. The signed Deficiency Notice was provided to Staff at the time of termination, which was two days after Sparks had reported his concerns about Staff's conduct to Sheriff Wied.

Staff timely appealed the termination decision to Sheriff Wied, seeking reinstatement. In an exchange of initial letters, Sheriff Wied advised Staff to "articulate all of his responses to his termination and the reasons for his appeal" prior to the appeal deadline. Each incident had been identified in the Deficiency Notice with factual details and objective criteria such as case number or date and time, and the Sheriff's office had produced copies of the video recordings and other relevant documents at Staff's request. However, rather than contesting the substantive grounds for termination or attempting to contextualize his behavior, Staff's appeal to Sheriff Wied complained of procedural irregularities in the process leading to his discharge. Citing sections 614.022 and 614.023 of the Texas Government Code, Staff asserted he could not be disciplined absent a written complaint signed by "the person who was the subject of the alleged misconduct," that no such document had ever been provided to him, and as a result, he had no opportunity to respond to the complaint or explain his actions.

After Sheriff Wied summarily upheld the termination decision, Staff sued the sheriff and Colorado County (collectively, Sheriff Wied) for declaratory, injunctive, and monetary relief. Staff alleged the Colorado County Sheriff's Department violated Government Code sections 614.022 and 614.023 by terminating his employment without obtaining and giving him a copy of a signed complaint and without allowing him an opportunity to respond to the allegations before he was disciplined.

In cross-motions for partial summary judgment, the material facts were not disputed. Nor was there any dispute that Staff was covered under Chapter 614, Subchapter B.[5] However, in seeking summary judgment on liability, the parties relied on conflicting constructions of the relevant statutory provisions. The parties' summary-judgment positions diverged as to whether the circumstances attending Staff's termination triggered the statutory process and, if so, whether Sheriff Wied complied with the statutory requirements.

Staff's summary-judgment motion asserted Chapter 614, Subchapter B applied because his employment was terminated based on an investigation that originated with Sparks's complaint; Sparks did not sign a written complaint against Staff; Colorado County's investigation of Sparks's complaint was "ex parte" and did not afford Staff an opportunity to respond to the allegations; the Deficiency Notice Lt. Neisner signed did not satisfy the statutory requirement of a signed complaint because "the investigation into the complaint did not begin internally, but was generated as the result

_____

[5] Chapter 614, Subchapter B applies to "a peace officer under Article 2.12, Code of Criminal Procedure, or other law who is appointed or employed by a political subdivision of this state," unless the political subdivision is subject to a meet-and-confer or collective-bargaining agreement that has been established under chapters 143 or 174 of the Local Government Code and that "includes provisions relating to the investigation of, and disciplinary action resulting from, a complaint against a peace officer or fire fighter, as applicable." *Id.* § 614.021.

6

of an external communication with the Sheriff's Office"; and even if the Deficiency Notice would otherwise be sufficient, Staff had no opportunity to defend himself against the allegations because he did not receive the notice until discipline was imposed. The central theme of Staff's summary-judgment motion was that an internal report based on an external complaint alleging misconduct is insufficient to satisfy the statutory requirements.

Sheriff Wied's motion for partial summary judgment argued that Chapter 614, Subchapter B did not apply to Staff's termination because Staff's employment was terminable at will; termination "was not based on a specific complaint"; and the grounds for termination stated in the Deficiency Notice were not exhaustive. In the alternative, Sheriff Wied asserted the disciplinary process satisfied the statutory requirements as a matter of law because (1) the allegations of misconduct were investigated and supported by evidence; (2) the Deficiency Notice qualified as a signed complaint regarding those allegations; (3) the signed complaint was provided to Staff promptly after the internal investigation was initiated; and (4) Staff had an opportunity to respond to the allegations in the Deficiency Notice before Sheriff Wied—the head of the law-enforcement agency and final decisionmaker—acted on it.

The trial court granted Sheriff Wied's motion for partial summary judgment and denied Staff's motion. The trial court subsequently rendered final judgment dismissing Staff's claims and awarding Sheriff Wied $10,483.07 for reasonable and necessary attorney's fees and up to $30,000 in conditional appellate attorney's fees.

The court of appeals reversed, rendered judgment that Sheriff Wied violated Chapter 614, and remanded the case to the trial court for a decision on Staff's request for attorney's fees under

7

Texas's Uniform Declaratory Judgment Act.[6] As an initial matter, the court held Colorado County's status as an at-will employer would not preclude application of sections 614.022 and 614.023, because the statute does not limit an employer's authority to discharge an employee but merely prescribes procedures that apply only "when a complaint of misconduct forms the basis of the decision to terminate employment."[7] The court further held that Sheriff Wied did not comply with the statute because he terminated Staff's employment based on a "complaint" of misconduct without obtaining and providing a complaint signed by "the victim of the alleged misconduct."[8] The court concluded Sparks was the complaining party, because the misconduct allegations originated with him.[9] Accordingly, the internally generated Deficiency Notice Lt. Neisner signed did not constitute a "complaint" within the meaning of section 614.022, and no statutorily-compliant complaint was provided to him before he was terminated "effective immediately."[10]

We granted Sheriff Wied's petition for review to address statutory issues of first impression that have broad application to law-enforcement agencies, peace officers, and other public servants and their employers.[11]

---

[6] 470 S.W.3d 251, 262 (Tex. App.—Houston [1st Dist.] 2015).

[7] *Id.* at 258.

[8] *Id.* at 261.

[9] *Id.*

[10] *Id.* at 261-62.

[11] In addition to peace officers appointed or employed by a political subdivision, Chapter 614, Subchapter B, applies to law-enforcement officers for the State of Texas, certain state and local fire fighters, detention officers, and county jailers. TEX. GOV'T CODE § 614.021.

## II. Discussion

The dispute in this case turns on the proper construction of Chapter 614, Subchapter B as applied to the undisputed facts.[12]  Subchapter B addresses termination of a covered peace officer's employment, and any other "disciplinary action," that is based on a "complaint" of misconduct.[13] The statute imposes certain procedures the head of a local law-enforcement agency must follow to "consider[]" a complaint or take disciplinary action, including terminating employment "based on the subject matter of the complaint."[14]

Subchapter B, a statute of notable brevity, provides:

### § 614.022 Complaint to Be in Writing and Signed by Complainant

To be considered by the head of a . . . local law enforcement agency, the complaint must be:

(1) in writing; and

(2) signed by the person making the complaint.[15]

### § 614.023 Copy of Complaint to Be Given to Officer or Employee

(a) A copy of a signed complaint against a law enforcement officer of this state or a fire fighter, detention officer, county jailer, or peace officer appointed or employed

---

[12] *See BCCA Appeal Grp., Inc. v. City of Hous.*, 496 S.W.3d 1, 7 (Tex. 2016) ("Traditional summary judgment is proper when the movant establishes that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law."); *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) (statutory construction presents a question of law reviewed de novo).

[13] TEX. GOV'T CODE §§ 614.021-.023.

[14] *Id.* §§ 614.022-.023.

[15] *Id.* § 614.022.

by a political subdivision of this state shall be given to the officer or employee within a reasonable time after the complaint is filed.

(b) Disciplinary action may not be taken against the officer or employee unless a copy of the signed complaint is given to the officer or employee.

(c) In addition to the requirement of Subsection (b), the officer or employee may not be indefinitely suspended or terminated from employment based on the subject matter of the complaint unless:

> (1) the complaint is investigated; and
>
> (2) there is evidence to prove the allegation of misconduct.[16]

These statutes provide "covered employees with procedural safeguards to reduce the risk that adverse employment actions would be based on unsubstantiated complaints."[17] In enacting these statutes, the Legislature "determined that the value of these protections outweighs the fiscal and administrative burdens incurred by complying with statutory requirements."[18]

Sheriff Wied argues that (1) Subchapter B does not apply to employment relationships that are terminable at will, and (2) to the extent it does apply, no process is triggered absent a citizen-generated complaint that provides the sole basis for disciplinary action. According to Sheriff Wied, County Attorney Ken Sparks did not file a "complaint" against Staff, but merely discussed evidentiary problems in a case referred for prosecution by the Sheriff's office. The communication, he says, "demonstrated the necessary and required coordination of the Texas judicial system between

---

[16] *Id.* § 614.023.

[17] *Turner v. Perry*, 278 S.W.3d 806, 823 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

[18] *Id.*

10

the prosecuting attorney . . . and the law enforcement agency . . . to effectively prosecute criminal violations." He asserts, moreover, that the problem Sparks identified was merely an example of Staff's deficiencies, and not the exclusive basis for disciplinary action. In short, there was no "complaint" that provided the basis for Staff's termination and, even if there were, Staff could be terminated at will notwithstanding a pending complaint. In the alternative, Sheriff Wied maintains the disciplinary process fully complied with the statutory requirements.

Staff counters that, under the statute's plain language, the statutory procedures are a predicate to discipline when an allegation of misconduct from any source—whether external to the law-enforcement agency or arising from within the agency—plays a part in the disciplinary action. Accordingly, the statutory process was triggered because Sparks's complaint about Staff's behavior was the catalyst for his dismissal. Relying on judicial constructions of the statute, Staff argues the Deficiency Notice cannot meet the signed-complaint requirement because it was not signed by "the victim of the alleged misconduct."[19] Per Staff, the only possible victims of his behavior are the affected citizens and perhaps the county attorney, whose criminal prosecution could have been frustrated by evidentiary problems arising from Staff's recorded encounter with the defendant.[20]

---

[19] *See Guthery v. Taylor*, 112 S.W.3d 715, 723 (Tex. App.—[14th Dist.] 2003, no pet.) (construing "person making the complaint" to mean "complainant" and applying a special definition of that term from a civil-service statute with a similar purpose); *see also* TEX. LOC. GOV'T CODE § 143.123(a)(1) ("'Complainant' means a person claiming to be the victim of misconduct by a fire fighter or police officer.").

[20] Considering that the county attorney had no better knowledge about the inciting incident than Lt. Neisner, Staff's distinctions split remarkably fine hairs. He invokes Chapter 614, Subchapter B's requirements on the basis of the county attorney's report about the video's contents, but in the same breath, argues Lt. Neisner could not have made a complaint based on equal access to the same information. *Cf. Fudge v. Haggar*, 621 S.W.2d 196, 198-99 (Tex. App.—Texarkana 1981, writ ref'd n.r.e.) (while information provided from an external source prompted an internal investigation, the investigating supervisor could satisfy the signed-complaint requirement based on an investigation that was conducted internally).

11

Staff does not allow that his public interactions may have harmed the integrity of the sheriff's department or impaired the effective administration of justice by his colleagues,[21] but even if so, Staff says the Deficiency Notice did not satisfy Subchapter B's requirements because Lt. Neisner imposed discipline cotemporally with that document's presentment to him. Though Staff does not contend the allegations were not investigated or supported by some evidence, he asserts the failure to provide a signed copy of a complaint before dismissal precluded his participation in the investigation and hampered his ability to defend himself.

The parties' arguments present statutory construction issues pertaining to when and how the statute applies. These are questions of law that we review de novo under familiar statutory construction principles.[22]

### A. Applicable Standards of Review

When construing a statute, our primary objective is to give effect to the Legislature's intent.[23] We seek that intent "first and foremost" in the statutory text,[24] and "[w]here text is clear, text is determinative" of intent.[25] "The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or

---

[21] *Cf. City of DeSoto v. White*, 288 S.W.3d 389, 396 (Tex. 2009) (observing the "vital role" of police officers in our society and "the need for continued public trust in the exercise of their duties").

[22] *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).

[23] *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015).

[24] *Id.*

[25] *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009).

12

nonsensical results."[26] When interpreting the Legislature's words, however, we must never "rewrite the statute under the guise of interpreting it,"[27] and we may not look beyond its language for assistance in determining legislative intent unless the statutory text is susceptible to more than one reasonable interpretation.[28]

The statutory-construction issues integral to the disposition of this appeal arise in the context of cross-motions for summary judgment based on undisputed material facts. When both parties move for summary judgment and the trial court grants one motion and denies the other, as in this case, we determine all issues presented and render the judgment the trial court should have rendered.[29]

### B. At-Will Employment

We begin our analysis by considering Sheriff Wied's principal argument, that sections 614.022 and 614.023 are inapplicable because Staff's employment was terminable at will and there were other grounds for termination besides any specific "complaint" that might have triggered the statutory process. In other words, the existence of a "complaint" is immaterial if the sheriff could have discharged Staff for any other reason.

---

[26] *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011); *see Keystone RV Co. v. Tex. Dep't of Motor Vehicle*, ___ S.W.3d ___, 2016 WL 6677935, at *1 n.7 (Tex. App.—Austin 2016, no pet.) ("[C]ontext informs, among other considerations, whether the Legislature intended words in their 'plain' or 'common' meaning, in a narrower or more technical connotation, or whether the facially 'plain' meaning would yield the rarity of 'absurd results' the Legislature could not possibly have intended.").

[27] *In re Ford Motor Co.*, 442 S.W.3d 265, 284 (Tex. 2014).

[28] *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012).

[29] *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

13

Appointment of a deputy sheriff involves the public welfare and the expenditure of public funds. The general rule is that a deputy sheriff serves at the sheriff's pleasure,[30] which means the public official chosen by the voters to serve the public's interest holds the power and discretion to terminate the employment of subordinates and "is accountable to no one other than the voters for his conduct."[31] Sheriffs hold "virtually unbridled authority in hiring and firing their employees,"[32] and as a general proposition, may terminate a deputy's employment for good cause, bad cause, or no cause at all.[33] Thus, a deputy sheriff has "precarious tenure"[34] and no entitlement to continued employment unless an exception to the at-will doctrine is recognized at law[35] or the at-will

---

[30] TEX. LOC. GOV'T CODE § 85.003(c), (f); *see also Cty. of Dallas v. Wiland*, 216 S.W.3d 344, 347 (Tex. 2007).

[31] *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980) ("Because of the unique structure of county government in Texas, . . . elected county officials, such as the sheriff and treasurer hold[] virtually absolute sway over the particular tasks or areas of responsibility entrusted to [them] by state statute and [are] accountable to no one other than the voters for [their] conduct therein."); *see also Abbott v. Pollock*, 946 S.W.2d 513, 517 (Tex. App.—Austin 1997, writ denied) (recognizing the "policy that elected officers, such as sheriffs, discharge the public trust and carry the responsibility for the proper discharge of that trust, and therefore, should be free to select persons of their own choice to assist them" (citing *Renfro v. Shropshire*, 566 S.W.2d 688, 691 (Tex. Civ. App.—Eastland 1978, writ ref'd n.r.e.))).

[32] *Irby v. Sullivan*, 737 F.2d 1418, 1421 (5th Cir. 1984).

[33] *See, e.g.*, *Montgomery Cty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998); *Abbott*, 946 S.W.2d at 517.

[34] *Murray v. Harris*, 112 S.W.2d 1091, 1094 (Tex. Civ. App.—Amarillo 1938, writ dism'd); *see also Barrett v. Thomas*, 649 F.2d 1193, 1199 (5th Cir. 1981) ("[D]eputy sheriffs have no legal entitlement to their jobs as public employees; the sheriff may fire them for many reasons or for no articulable reason at all.").

[35] *See, e.g.*, *Battin v. Samaniego*, 23 S.W.3d 183, 188 (Tex. App.—El Paso 2000, pet. denied) (observing the Legislature can make exceptions to the at-will employment relationship and discharge may not violate the law; *Mott v. Montgomery Cty., Tex.*, 882 S.W.2d 635, 637-38 (Tex. App.—Beaumont 1994, writ denied) (termination of employment cannot contravene a statute or result from the employee's refusal to perform an illegal act).

14

employment relationship has been modified by express agreement[36] or supplanted by a civil-service system.[37]

In this case, the parties agree Staff's employment was terminable at will, but take contrary positions on Subchapter B's application in the at-will context. In Sheriff Wied's view, the statutory procedures apply only when a misconduct complaint is the sole basis for termination. Staff contends—and the court of appeals held—that the statute applies whenever the decision to terminate employment is based on a complaint of misconduct.[38] We agree with Staff and the court of appeals. Although Sheriff Wied could have discharged Staff for any reason or no reason, Chapter 614, Subchapter B nevertheless applies when an at-will employer terminates for cause that derives from allegations in a complaint of misconduct instead of terminating at will for no cause or terminating for other cause.[39]

Sections 614.022 and 614.023 do not abrogate the right to discharge an employee at will or require cause for termination.[40] Rather, the statute sets out a process for addressing discipline, including termination, when discipline is based on a "complaint" of misconduct. If an employer

---

[36] *See Cty. of Dall. v. Wiland*, 216 S.W.3d 344, 348 (Tex. 2007).

[37] *See* TEX. LOC. GOV'T CODE § 85.003(f) (deputies covered by a county civil-service statute adopted under Chapter 158 of the Local Government Code "may be suspended or removed only for a violation of a civil service rule adopted under that system").

[38] 470 S.W.3d 251, 258 (Tex. App.—Houston [1st Dist.] 2015).

[39] *Paske v. Fitzgerald*, 499 S.W.3d 465, 475 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (observing that not every termination of a law-enforcement officer necessarily has its genesis in a "complaint").

[40] *See, e.g.*, *Stem v. Gomez*, 813 F.3d 205, 212-13 (5th Cir. 2016) ("Section 614.023 certainly does not explicitly provide that an officer facing a complaint can only be terminated for cause. Section 614.023 also does not resemble other statutes that clearly establish such a rule.").

15

terminates or indefinitely suspends a covered employee based on the subject matter of a complaint—rather than dismissing the employee at will—removal *on the basis of a misconduct complaint* requires compliance with the statutory procedure.

The creation of procedural rights for cause-based dismissal does not limit the sheriff's ability to terminate at will. Nor does conditioning an employee's removal on compliance with specified procedures in specified circumstances equate to an entitlement to continued employment or a modification of the at-will employment relationship.[41] Rather, the statutory process helps ensure that cause-based removals of a specified nature bear a modicum of proof and that the affected employee has notice of the basis for removal. Simply stated, Chapter 614 does not give an employee a right to continued employment, but it does require compliance with the statutory process before an employee may be permanently encumbered by a damaging discharge record.

Removal based on an allegation of misconduct naturally carries more significant consequences than dismissal at will,[42] and the procedural safeguards provided in Chapter 614,

---

[41] *Cf. Renken v. Harris Cty.*, 808 S.W.2d 222, 225 (Tex. App.—Houston [14th Dist.] 1991, no writ); *Irby v. Sullivan*, 737 F.2d 1418, 1422 n.4 (5th Cir. 1984) ("'[M]erely conditioning an employee's removal on compliance with certain specified procedures' does not necessarily mean that an employee has a substantive property right in continued employment." (quoting *Bishop v. Wood*, 426 U.S. 341, 345 (1976))). *But see Turner v. Perry*, 278 S.W.3d 806, 822 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (holding school district police officer had a constitutionally protected property interest in continued employment pursuant to Chapter 614, Subchapter B, which was expressly adopted in the school district's policy manual and had previously been applied to the officer).

[42] In any employment context, being discharged for misconduct is manifestly more consequential than termination at will. But for peace officers, the ensuing repercussions may be even more serious. For example, when a licensed peace officer's employment is terminated, the law-enforcement agency must submit a report to the Texas Commission on Law Enforcement that includes a statement about whether the licensee was honorably discharged, generally discharged, or dishonorably discharged and, to the extent required by the Commission, provide an explanation of the circumstances under which the person was terminated. TEX. OCC. CODE § 1701.452(a), (b). A peace officer is not "honorably discharged" if the officer was terminated for insubordination or untruthfulness, due to allegations of criminal misconduct, a documented performance problem, or a disciplinary investigation. *Id.* § 1701.452(b). A law-enforcement agency cannot hire a licensed peace officer before "making a request to the commission for any

16

Subchapter B advance two significant objectives: (1) ameliorating the risk that disciplinary action might be based on frivolous complaints and (2) helping to ensure an affected employee has sufficient notice of the charges to defend against the allegations.[43] Providing notice affords the employee an opportunity to address the matter but does not preclude the employer from terminating employment so long as the "complaint" has been investigated and "there is evidence to prove the allegation of misconduct."[44]

In sum, Chapter 614, Subchapter B does not preclude termination of employment absent compliance with the statutory process, but when allegations of misconduct are serious enough to warrant termination—independently or as a component of cumulative discipline—a complaint must be filed, investigated, and substantiated.[45] The statute prescribes a procedure that applies when

---

employment termination report regarding the person" or "obtain[ing] from the commission any service . . . records regarding the person maintained by the commission." *Id.* § 1701.451(a). Moreover, "[t]he commission shall suspend the license of an officer . . . on notification that the officer has been dishonorably discharged if the officer has previously been dishonorably discharged from another law enforcement agency." *Id.* § 1701.4521(a).

[43] *See Treadway v. Holder*, 309 S.W.3d 780, 784-85 (Tex. App.—Austin 2010, pet. denied) (failure to provide proper documentation of the complaints against an officer impairs the officer's ability to investigate or defend against the complaints).

[44] *See* TEX. GOV'T CODE § 614.023.

[45] The statute does not prescribe a quantum of proof for substantiating an allegation of misconduct. Though an initial draft of section 614.023(c)'s enacting legislation included language requiring "*sufficient* evidence to prove an allegation of misconduct," that language did not make the final cut. A bill analysis indicates that language was specifically amended to (1) limit investigation and proof to indefinite suspension or termination and (2) require "'evidence' rather than 'sufficient evidence' as in the original bill, to prove any allegation of misconduct." *See* House Comm. on Urban Affairs, Bill Analysis, Tex. H.B. 639, 79th Leg., R.S. (2005) (responding to opponents' concerns that no threshold standard of proof was required and supporters' position that silence on the quantum of evidence "would leave the discretion to decide what is sufficient in the hands of state and local departments where it lies already[, so] state and local agencies would lose no authority by the requirement of a sufficient evidence standard"). We have emphasized that courts must take statutes as they find them and must presume the Legislature included words in them that it intended to include and omitted words it intended to omit. *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

17

termination or indefinite suspension is "based on the subject matter of [a misconduct] complaint."[46]

Though the statutory process may cause an administrative burden on law-enforcement agencies, the

procedural protections offered by the statute outweigh the corresponding burden.[47]

The issue here is not whether Sheriff Wied could have discharged Staff at will rather than

for sufficient cause; the issue is whether his termination for cause was based on a "complaint,"

within the meaning of the statute. If it was, the allegations in the complaint could not provide a basis

for his discharge unless he was timely provided a copy of the "complaint" "signed by the person

making the complaint."

### C. Invoking and Fulfilling Chapter 614, Subchapter B's Requirements

The parties' arguments require us to consider, as a matter of first impression, the kind of

"complaint" and "person making the complaint" that is necessary to both activate and satisfy the

statute's procedural safeguards.[48] Subchapter B does not define or elaborate on the nature of a

"complaint" or the type of "person" who may make and sign a complaint. Because these terms are

not statutorily defined, we must give them their ordinary and common meaning unless the context

suggests the Legislature intended a different or more technical meaning or unless such a construction

leads to absurd results.[49]

---

[46] TEX. GOV'T CODE § 614.023(c).

[47] *Turner*, 278 S.W.3d at 823.

[48] *Stem v. Gomez*, 813 F.3d 205, 215 (5th Cir. 2016) ("Texas courts have not resolved important questions about [Chapter 614, Subchapter B].").

[49] *See FKM P'ship, Ltd. v. Bd. of Regents of the Univ. of Hous. Sys.*, 255 S.W.3d 619, 633 (Tex. 2008) ("We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired, but otherwise, we construe the statute's words according to their plain and common meaning unless a contrary intention is

18

In determining the ordinary and common meaning of an undefined word in a statute, we may consider a variety of sources, including dictionary definitions, judicial constructions of the term, and other statutory definitions.[50] A review of dictionary definitions reveals that "complaint" refers to "the act or action of expressing protest, censure, or resentment: expression of injustice";[51] a "formal allegation or charge against a party made or presented to the appropriate court or officer";[52] "something that is the cause or subject of protest or grieved outcry";[53] "a statement that a situation is unsatisfactory or unacceptable";[54] and "a reason for . . . [or] the expression of dissatisfaction."[55] Statutory definitions of the term generally accord with the foregoing.[56] As the authorities

---

apparent from the context, or unless such a construction leads to absurd results.").

[50] *See, e.g.*, *TGS–NOPEC Geophysical*, 340 S.W.3d at 441 (consulting dictionaries to ascertain the generally accepted definition of undefined statutory language).

[51] WEBSTER'S THIRD NEW INT'L DICTIONARY (2002).

[52] *Id.*

[53] *Id.*

[54] NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010).

[55] *Id.*

[56] *See, e.g.*, TEX. GOV'T CODE, Title 2, Subtitle G App. A-1 § 1.06(G) ("'Complaint' means those written matters received by the Office of the Chief Disciplinary Counsel that, either on the face thereof or upon screening or preliminary investigation, allege Professional Misconduct or attorney Disability, or both, cognizable under these rules or the Texas Disciplinary Rules of Professional Conduct."); TEX. HEALTH & SAFETY CODE § 555.001 ("'Complaint' means information received by the office of independent ombudsman regarding a possible violation of a right of a resident or client and includes information received regarding a failure . . . to comply with [relevant] polices and procedures . . . ."); TEX. INS. CODE §§ 542.005(a) (defining "complaint" as "any written communication primarily expressing a grievance"), 751.003(a)(1) ("'Complaint' means a written or documented oral communication, the primary intent of which is to express a grievance or an expression of dissatisfaction."), 843.002(6) (defining "complaint" as "any dissatisfaction expressed orally or in writing by a complainant to a health maintenance organization regarding any aspect of the health maintenance organization's operation"); *cf. also* TEX. GOV'T CODE, Title 2, Subtitle G App. A-1 § 1.06(R) ("'Grievance' means a written statement, from whatever source, apparently intended to allege [attorney misconduct or disability] received by the Office of the Chief Disciplinary Counsel.").

consistently confirm, the word "complaint" ordinarily means an expression of dissatisfaction, including an allegation made by one against another.[57]

When a "complaint" is made, however, the procedures in Chapter 614, Subchapter B come into play and limit the law-enforcement agency's ability to take "disciplinary action" based on the complaint. Though the ordinary meaning of "complaint" encompasses allegations that may be formal or informal, written or unwritten, satisfaction of the statute requires complaints that are in writing and "signed by the person making the complaint."[58]

The term "person" generally refers to a natural person (i.e., any individual),[59] and under Subchapter B's plain language, more than one "person" could make a "complaint." Applying the ordinary meaning of the terms to the facts in this case, the county attorney could be a "person" who

---

[57] *Paske v. Fitzgerald*, 499 S.W.3d 465, 474 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

[58] The analysis in one case suggests that failure to obtain a signed complaint from the victim of misconduct might *preclude the statute's application* altogether. *See Gehring v. Harris Cty. Tex.*, Civ. A. H-15-0726, 2016 WL 269620, at *11 (S.D. Tex. Jan. 21, 2016) ("Gehring does not assert that any of the alleged victims in the three incidents signed a written complaint against him that was the basis of the disciplinary measures taken against [him], but which was not provided to him before those measures were taken. Thus Gehring has failed to state a plausible claim under the Texas Government Code."). Although the analysis in the opinion is not entirely clear, reading the statute in such a manner would conflate application of the statute with satisfaction of its requirements and would allow employers to skirt the statutory requirements simply by choosing not to comply with the statute. This is not a reasonable construction of the statute.

[59] NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010) ("person" means "a human being regarded as an individual"); WEBSTER'S THIRD NEW INT'L DICTIONARY (2002) ("person" is "an individual human being," "a human being as distinguished from an animal or thing"). Depending on the context, however, the term may also include an artificial person, such as a government agency, partnership, association, corporation, trust, or other legal entity. *See, e.g.*, TEX. GOV'T CODE § 311.005 (unless a statute or context employing the word or phrase requires a different definition, "person," when used in a statute, "includes corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity"); TEX. INS. CODE § 843.002(21) (defining "person" as "any natural or artificial person, including an individual, partnership, association, corporation, organization, trust, [and other legal entities]"). While including artificial persons seems unlikely in this context, the issue is immaterial to the appeal's disposition.

20

may make and sign a written "complaint" for purposes of triggering and satisfying the statute's procedural requirements, and Lt. Neisner could as well.

Courts construing the statute, however, have recognized distinctions that affect when the procedural requirements are invoked and limit who may discharge them. Some cases have held that Chapter 614, Subchapter B applies to "any allegation of misconduct that could result in disciplinary action,"[60] but disagreement exists about whether the statute applies to misconduct allegations that originate from within the law-enforcement agency as opposed to those arising from external sources.[61] Others hold that internal disciplinary matters based on the agency head's personal knowledge do not constitute a "complaint" under section 614.022 and 614.023, and consequently,

---

[60] *Bracey v. City of Killeen*, 417 S.W.3d 94, 99 (Tex. App.—Austin 2013, no pet.); *Treadway v. Holder*, 309 S.W.3d 780, 782-86 (Tex. App.—Austin 2010, pet. denied); *id*. at 786-89 & n.1 (WALDROP, J., dissenting) (agreeing with the majority that the statute makes no distinction between "external" complaints and "internal" complaints, but arguing the term "complaint" does not include allegations of misconduct originating within the officer's own "chain of command," which are properly characterized as disciplinary matters that do not require protection under Chapter 614, Subchapter B).

[61] *Compare Paske*, 499 S.W.3d at 475 ("[A] 'complaint' may originate from either outside a law enforcement agency or from within it" but not all dismissals "necessarily have [their] genesis in a 'complaint'"), *Treadway*, 309 S.W.3d at 784 ("[A]ny 'allegation of misconduct' for which disciplinary action may be imposed represents a complaint, regardless of the source."), and Tex. Att'y Gen. Op. No. GA-0251 (2004) ("The authority of a head of police department to discipline is not limited to complaints filed by a citizen . . .; [a]s circumstances warrant, a superintendent of the school district or others may initiate disciplinary action by filing a signed complaint, or complaints may prompt an internal investigation and report by the police department sufficient to satisfy the [statutory] requirements."), *with Gehring*, 2016 WL 269620, at *11 (holding that an officer failed to state a plausible claim under Chapter 614, Subchapter B, because the statute applies only when "a written signed complaint has been made by a victim, not a law enforcement agency's internal observation") *and Jackley v. City of Live Oak*, No. SA-08-CA-0211-OG, 2008 WL 5352944, at *5 (W.D. Tex Dec. 19, 2008) ("Because the letter put [the terminated police officer] on notice of an internal investigation, rather than an investigation of a complaint by a citizen, it was appropriately signed by [the City Manager]" as "there is nothing in the statute to indicate that sections 614.022-[.]023 apply to anything other than citizen-generated complaints"); *cf. Baldridge v. Brauner*, No. 01-10-00852-CV, 2013 WL 4680219, at *5 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (declining to consider whether section 614.023 applies to internal performance issues because the employer complied with the statute in any event; multiple potential grounds for termination were given and statutory requirements were satisfied with regard to at least one of the stated grounds).

21

compliance with the statutory process is not required.[62]  With regard to the signed-complaint requirement, judicial constructions of the statute have narrowed the ordinary meaning of "person making the complaint," such that only the "victim" of the alleged misconduct can fulfill that requirement.[63]

We need not consider in this case whether Chapter 614, Subchapter B is implicated by an internally generated complaint; whether or under what circumstances disciplinary action by an agency head or someone else in the chain of command invokes the statute; what constitutes "personal knowledge" that may be sufficient to remove disciplinary action from Chapter 614's ambit; or whether personal knowledge may be acquired technologically and, if so, how concerns about authenticity or completeness factor into the analysis.[64]  Rather, we conclude that the dispositive issue under the facts presented is whether "the person making the complaint" must be "the victim of the alleged misconduct."  Adhering to the precepts that "[e]nforcing the law as written is a court's

[62] *See Paske*, 499 S.W.3d at 475; *Treadway*, 309 S.W.3d at 786-89 & n.1 (Tex. App.—Austin 2010, pet. denied) (WALDROP, J., dissenting) (agreeing with the majority that the statute makes no distinction between "external" complaints and "internal" complaints, but arguing the term "complaint" does not include those generated within the officer's own "chain of command"); *accord Rogers v. City of Yoakum*, 660 F. App'x 279, 285 (5th Cir. Aug. 30, 2016) (Chapter 614, Subchapter B was not implicated when the city manager fired the police chief for mishandling an investigation into allegations of misconduct about a subordinate officer; the termination decision was based on the city manager's "*own* observations of [the chief's] behavior and his responses to issues within the department" (citing *Paske*, 499 S.W.3d at 475)).  *But see Treadway*, 309 S.W.3d at 783-85 (applying Chapter 614, Subchapter B to complaint that originated within the chain of command).

[63] *See, e.g.*, *Guthery v. Taylor*, 112 S.W.3d 715, 723 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

[64] In this case, the video recordings, which conferred some degree of "personal knowledge" to those who viewed them, were obtained directly from Staff's vehicle.  Accordingly, concerns about authenticity might not be as significant as those that could arise from viral videos, for example, or recordings provided by a third party.  But even if authenticity is not a concern, image capture might not tell the whole story.  Here, for example, the Deficiency Notice observes that, in one of Staff's traffic-stop encounters, "there was no evidence of her not cooperating *on the video*." (Emphasis added.) A picture may be worth a thousand words, but not every narrative is a short story.  Even when there is relatively "objective" evidence available, complying with Chapter 614, Subchapter B's requirements would allow an affected employee to respond with evidence that could provide critical context.

22

safest refuge in matters of statutory construction" and that "we should always refrain from rewriting text that lawmakers chose,"[65] we hold the statute's plain language does not support a construction that restricts the meaning of "the person making the complaint" to "the victim of the alleged misconduct."

### D. Collateral Linguistic Restraints on Plain Language

The "victim of misconduct" limitation is borrowed from a special definition of the term "complainant" provided in section 143.123 of the Texas Local Government Code, which is part of a civil-service statute enacted to "secure efficient fire and police departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public servants."[66] Chapter 143's purpose is similar but not identical to Chapter 614, Subchapter B's purpose, because the latter does not guarantee "permanent employment tenure" for covered public servants and "free[dom] from political influence" may be advanced by Subchapter B but is not an express statutory objective.

Section 143.123, which governs investigation of misconduct complaints against fire fighters and police officers in municipalities meeting a threshold population requirement, defines "complainant" for purposes of that section as "a person claiming to be the victim of misconduct by a fire fighter or police officer."[67] The term "complainant" includes a person who is a peace officer.[68]

---

[65] *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009).

[66] TEX. LOC. GOV'T CODE § 143.001; *see Guthery*, 112 S.W.3d at 722-23 (deriving "victim of misconduct" limitation by reference to section 143.001).

[67] TEX. LOC. GOV'T CODE § 143.123(a)(1); *see also id.* § 143.101 (except as otherwise provided, Chapter 143, Subchapter G applies only to a municipality with a population of 1.5 million or more); *id.* §§ 143.301, .312(b)(1) (defining "complainant" similarly in a civil-service statute applicable to certain municipalities with a population of

23

The theory that the Legislature intended "a person making a complaint" under Chapter 614,

Subchapter B to bear a similarly narrow meaning derives from a syllogism of sorts.

That is:

- In common parlance, a "person making a complaint" is the same thing as a "complainant."

- Under a special definition in a statute of similar purpose (section 143.123 of the Local Government Code), the term "complainant" is restricted to an alleged "victim of misconduct."

- Therefore, the Legislature likely intended a "person making a complaint" in section 614.022 of the Government Code to refer only to "the victim of misconduct."[69]

This analysis relies on a principle of statutory construction that,

Whenever a legislature has used a word in a statute in one sense and with one meaning, and subsequently uses the same word in legislating on the same subject-matter, it will be understood as using it in the same sense, unless there be something in the context or the nature of things to indicate that it intended a different meaning thereby. The rule applies when the phrases are substantially the same.[70]

---

460,000 or more or which operate under a city-manager form of government).

[68] *See id.* § 143.123(e) ("complainant" may not be assigned to investigate a complaint), (f) (a fire fighter or police officer may not be interrogated based on "a complaint by a complainant who is not a peace officer unless the complainant verifies the complaint"); *see also id.* § 143.312(f), (g) (same).

[69] *See generally Guthery*, 112 S.W.3d at 721-22.

[70] *Brown v. Darden*, 50 S.W.2d 261, 263 (Tex. 1932) (internal citation and punctuation omitted); *see also L&M-Surco Mfg., Inc. v. Winn Tile Co.*, 580 S.W.2d 920, 926 (Tex. Civ. App.—Tyler 1979, writ dism'd) (observing the principle "applies with particular force where the meaning of a word as used in one act is clear or has been judicially determined, and the same word is subsequently used in another act pertaining to the same subject").

Stated another way, "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."[71]

A few practical considerations prevent us from drawing the same conclusion about the impact of the special definition of "complainant" in section 143.123, however. First, "complainant" is not a term the Legislature used in enacting sections 614.022 and 614.023 or the predecessor statute.[72] Although the term was added to section 614.022's caption during codification,[73] "the title of the section carries no weight, as a heading 'does not limit or expand the meaning of a statute.'"[74]

Second, while a "person making a complaint" and a "complainant" are similar terms, for purposes of determining whether statutory language shares a technical meaning, the relevant statutory comparators are "person making the complaint," as used in section 614.022, and "complaint by a complainant" in section 143.123. When stated thusly, the fallacy of the syllogism as a basis for discerning intent to cabin the plain meaning of section 614.022's language is more readily apparent.

We further observe that section 143.123 appears to contemplate investigation of complaints made by persons other than "complainants" and to use the special definition of that term to differentiate between processes that apply depending on the source of the information under investigation. Section 143.123 requires disclosure of "the name of each person who complained"

---

[71] TEX. GOV'T CODE § 311.011(b).

[72] *See* Act of May 16, 1969, 61st Leg., R.S., ch. 407, § 1, 1969 Tex. Gen. Laws 1333, 1333-34, *amended and codified by* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, secs. 614.022-.023, 1993 Tex. Gen. Laws 583, 679 (amended 2005) (current version at TEX. GOV'T CODE §§ 614.022-.023).

[73] *See* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, sec. 614.022, 1993 Tex. Gen. Laws 583, 679 (amended 2005) (current version at TEX. GOV'T CODE § 614.022).

[74] *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 809 (Tex. 2010) (quoting TEX. GOV'T CODE § 311.024).

concerning the matters under investigation; prohibits interrogation of a fire fighter or police officer "based on [an unverified] complaint by a complainant who is not a peace officer"; permits interrogation based on "events or conduct reported by a witness who is not a complainant without disclosing the name of the witness"; permits interrogation by anonymous complainants if "the departmental employee receiving the anonymous complaint" swears and certifies that the complaint was anonymous; and requires disclosure of "the name of each complaining party."[75] A "person making a complaint" within the meaning of Chapter 614.022 could reasonably encompass all of these categories of individuals.

Finally, we note that there is a distinct difference between consulting other statutory definitions to determine common meaning and engrafting a special definition from one statute to circumscribe the plain meaning of a term used in another.[76] While doing so may be appropriate when a word with an established meaning is employed in a subsequently enacted statute of similar purpose, that is not the case here; the special definition in section 143.123 was enacted more than

---

[75] TEX. LOC. GOV'T CODE § 143.123(e), (f).

[76] In point of fact, when the Legislature specially defines the term "complainant," the special definition usually accords with the common meaning of the term and is not restricted to an alleged "victim." *Compare* TEX. GOV'T CODE, Title 2, Subtitle G App. A-1 § 1.06(F) (defined as "the person, firm, corporation or other entity, including the Chief Disciplinary Counsel initiating a Complaint or Inquiry"); TEX. GOV'T CODE §§ 437.401 (meaning "an individual who brings an action or proceeding under this subchapter"), 571.002 (meaning "an individual who files a sworn complaint with the commission"); TEX. INS. CODE §§ 843.002(5) (meaning "an enrollee, or a physician, provider, or other person designated to act on behalf of an enrollee, who files a complaint"), 1305.004 (meaning "a person who files a complaint under this chapter," including an employee, employer, health-care provider, or another person designated to act on behalf of an employee); TEX. LABOR CODE § 21.002(4) (meaning "an individual who brings an action or proceeding under this chapter"); *and* TEX. PROP. CODE § 301.003(2), (12) (meaning "a person, including the commission, that files a complaint under Section 301.081," and "person" defined to include an individual and various artificial beings), *with* TEX. GOV'T CODE § 552.3215(a)(1) (meaning "a person who claims to be the victim of a violation of this chapter") *and* TEX. LOC. GOV'T CODE §§ 143.123(a)(1), .312(b)(1) (meaning "a person claiming to be the victim of misconduct by a fire fighter or police officer").

26

fifteen years later,[77] making an inference of legislative intent to similarly constrain the meaning of the words in section 614.022 much less compelling.[78]

While it is clear that the main objective of sections 614.022 and 614.023 is to provide procedural safeguards for covered employees, it seems inconceivable that the Legislature intended to hamstring employers from investigating and disciplining errant employees charged with safekeeping the public trust. No reasonable construction of the statute can support reading it as requiring employers to turn a deaf ear and a blind eye to allegations of misconduct serious enough to warrant termination of employment unless "the victim of the misconduct" is both willing and able to sign a complaint.[79]

Thus, we are not persuaded that resorting to extra-textual sources informs the statutory analysis, and we do not agree that the special definition of "complainant" in section 143.123(a)(1) can be adopted to restrict the plain meaning of the words the Legislature enacted in Chapter 614, Subchapter B. Doing so would add limitations neither found in nor supported by the text and is unnecessary to avoid an absurd consequence.

---

[77] Act of May 27, 1985, 69th Leg., R.S., ch. 958, § 19, sec. 30, 1985 Tex. Gen. Laws 3227, 3240 (amended 1987) (amended 1989) (current version at TEX. LOC. GOV'T CODE § 143.123(a)(1)).

[78] *But see Guthery v. Taylor*, 112 S.W.3d 715, 722 n.7 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (applying section 143.123's definition of "complainant"—despite its status as a subsequently enacted statute—based on "the relationship between the two statutes").

[79] The absurdity is manifest in a scenario involving an allegation of excessive force where the victim is incapacitated, but a witness to the event steps forward to make a complaint.

## E. Application

Considering the plain meaning of the language in Chapter 614, Subchapter B, we conclude the disciplinary process culminating in Staff's removal from his position as a deputy sheriff for the Colorado County Sheriff's Office complied with both the letter and the spirit of the law.

The statute requires a signed complaint setting forth the allegations of misconduct.[80] That requirement was satisfied by the Deficiency Notice Lt. Neisner signed. While the statute does not set forth required contents for a "complaint" or establish particular standards for specificity, the information detailed in the Deficiency Notice serves the "overarching statutory purposes"[81] of (1) reducing the risk that adverse employment actions will be based on unsubstantiated complaints and (2) ensuring the affected employee receives sufficient information to enable him to defend against the allegations.[82]

The statute also requires that the signed complaint be presented to the employee within a reasonable time and precludes imposition of any discipline "unless a copy of the signed complaint is given to the officer or employee."[83] Staff received the signed Deficiency Notice within two days of the initiation of an internal investigation. He suffered no disciplinary action until the complaint was in hand. Unlike sections 614.023(a) and (c), there is neither an express nor implied temporal

---

[80] TEX. GOV'T CODE §§ 614.022, .023(a).

[81] *Lang v. Tex. Dep't of Pub. Safety*, No. 03-12-00497-CV, 2014 WL 3562738, at *9 (Tex. App.—Austin July 18, 2014, no pet.) (mem. op.).

[82] *See Turner v. Perry*, 278 S.W.3d 806, 823-24 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (vague or anonymous complaints lacking names, dates, and other details prevented the officer from investigating the allegations and defending against them).

[83] TEX. GOV'T CODE § 614.023(a), (b).

28

limitation on presentment of a complaint in relation to the imposition of discipline. Nothing in the statute requires the complaint to be served before discipline is imposed or precludes disciplinary action while an investigation is ongoing. Nor does the statute require an opportunity to be heard before disciplinary action may be taken. In some situations, presentment of a complaint contemporaneously with the imposition of discipline may not be "within a reasonable time after the complaint is filed," but that is not the case here.

The statute further requires that indefinite suspension or termination from employment based on a complaint's subject matter be deferred until an investigation uncovers some evidence to prove the allegations.[84] However, once again, there is no requirement that the affected employee be offered a pre-termination opportunity to be heard or participate in the investigative process. Moreover, despite the Deficiency Notice's statement that Staff's employment was terminated "effective immediately," his termination was actually conditioned on his right to appeal within a time certain. In substantive effect, "immediate termination" was equivalent to suspension during the investigation—which the statute does not prohibit. Thereafter, Staff had ample opportunity to marshal any evidence bearing on the matters identified in the Deficiency Notice and to defend himself before Sheriff Wied—the head of the law-enforcement agency—"considered" the complaint and upheld the termination decision.[85]

---

[84] *Id.* § 614.023(c).

[85] *Id.* § 614.022.

### III. Conclusion

Under Chapter 614, Subchapter B, a disciplinary action may follow a signed complaint, or information that has been reported may prompt an internal investigation that generates a report sufficient to satisfy the statutory requirements. In this case, Staff had sufficient information to allow him to investigate the allegations and ample opportunity to defend himself and bring forth additional facts or circumstances for Sheriff Wied's consideration. Accordingly, assuming Chapter 614, Subchapter B applies under the circumstances, we hold Sheriff Wied complied with the statute. We therefore reverse the court of appeals' judgment and render judgment in Sheriff Wied's favor.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED:** February 3, 2017