Tracy Christopher, Justice *747 After Senior Captain Steven Dunbar was suspended from the Houston Fire Department ("the Department") for ten days for failure to obey an order to submit a completed medical questionnaire, Dunbar appealed the suspension to the Firefighters' & Police Officers' Civil Service Commission for the City of Houston ("the Commission"). The Commission upheld the suspension, and Dunbar appealed the ruling by filing a petition against the City of Houston and the Commission in a Harris County district court. He now appeals the trial court's orders granting the City and the Commission's motion for summary judgment and denying Dunbar's summary-judgment motion.
In the dispositive issue before us, Dunbar argues that the trial court's rulings were in error because a suspension is void if imposed "later than the 180th day after the date the department discovers or becomes aware of the violation that resulted in the suspension." TEX. LOC. GOV'T CODE ANN. § 143.117(d)(2) (West 2008). The evidence conclusively establishes that the Department suspended Dunbar more than 180 days after the acting head of the Department was aware of the original violation, and as a matter of law, the time for imposing a suspension did not begin again when the Department reissued the same order or when a Department employee submitted a verified complaint that Dunbar had violated the reissued order. See id. § 143.117(b).
We accordingly reverse and render judgment in Dunbar's favor.
I. BACKGROUND
Steven Dunbar, a senior captain with the Houston Fire Department ("the Department"), sustained a work-related injury in 2003 and eventually was released to full duty. While off duty in 2012, Dunbar sustained another injury that was found to be related to his 2003 injury.
As a result of the second injury, Dunbar was placed on temporary-duty status. The Department's "Leaves and Absences" Rules specify that if an injured firefighter is unable to perform full duties due to an injury and is placed on temporary-duty status, the firefighter is required to submit a physician-completed medical questionnaire every ninety days. Dunbar last submitted a completed medical questionnaire on January 22, 2014.
A. Campbell's April 2014 Order
On April 4, 2014, his superior officer Assistant Fire Chief Lisa Campbell ordered Dunbar to submit a completed medical questionnaire to the Department's risk-management office by April 22, 2014. Dunbar did not do so. Oussaphea Chea, the Department's human-resources specialist responsible for "ensuring that [the Department] has all the necessary paperwork and documentation for an injured employee," emailed Dunbar the day after the deadline passed to remind him that the medical questionnaire had not been returned. Dunbar responded that he had sent his medical documentation to a physician, but the doctor refused to take his case. Dunbar copied Lydia Henn in the Department's risk-management office on his response.
The Department took no further action until August 13, 2014, when Acting Fire Chief Richard Galvan advised Dunbar in writing that the Department would conduct an "Assessment Meeting" on August 27, 2014, "to discuss the medical questionnaire that remains outstanding."
*748 B. Campbell's August 2014 Order
After the assessment meeting, Campbell again ordered Dunbar in writing to submit a completed medical questionnaire to the Department's risk-management office. Campbell's August 27, 2014, order is identical to her April 4, 2014, order except that the original deadline of April 22, 2014 to return the completed questionnaire has been changed to September 27, 2014. Once again, Dunbar failed to comply and informed the Department that he was not able to locate a physician that would treat him.
C. Henn's Complaint
On October 14, 2014, Henn sent Campbell a memorandum reporting Dunbar's failure to comply with Campbell's August 27, 2014 order to submit a completed medical questionnaire. Two weeks later, Henn signed and notarized the memorandum and submitted it to "Staff Services" for the Department's Internal Affairs Unit to investigate.
D. Administrative Proceedings
The Department did not suspend Dunbar for noncompliance with a superior's order until April 8, 2015, when Fire Chief Terry Garrison suspended Dunbar for ten days without pay. Dunbar appealed the decision to the Commission, which found that the charges against him were true and constituted a sufficient basis or just cause for the suspension.
E. The Civil Suit
Dunbar filed a civil suit against the City and the Commission to set aside the suspension.[1] Because the interests of the City and the Commission are aligned, we will include the Commission in our references to "the City."
Dunbar pleaded that his suspension was wrongful because (1) he was suspended more than 180 days after the City knew or should have known of the infraction; (2) to the best of his ability, he obeyed the order to submit a completed medical questionnaire but no physician would treat him; (3) the suspension caused him monetary loss as well as loss of liberty in that "his freedom of employment was hindered"; and (4) "[t]he discipline and medical separation ... constitute[d] double jeopardy." Dunbar sought reinstatement to his former position with no time or pay lost due to the suspension. He also asked to have his record cleared of the violation. The City filed a plea to the jurisdiction in which it asserted that Dunbar had not argued before the Commission that the suspension was untimely or constituted double jeopardy, and thus, he failed to exhaust administrative remedies as to those claims. According to Dunbar, there was an evidentiary hearing on the plea to the jurisdiction, but no record of the hearing is before us. The record does show, however, that the trial court denied the jurisdictional plea regarding the timeliness of the suspension and granted it as to the "double jeopardy" claim.
Dunbar moved for traditional summary judgment on the ground that he was suspended outside the statutorily-mandated 180-day deadline for the Department to impose a suspension. After the trial court denied the motion, the City filed its own traditional motion for summary judgment in which it argued that the Commission's order sustaining Dunbar's suspension was reasonably supported by the evidence.
In his summary-judgment response, Dunbar again argued that (1) the discipline was issued "later than the 180th day after the date the department discovers or becomes *749 aware of the civil service rule violation" in contravention of Texas Local Government Code section 143.117(b) ; and (2) to the best of his ability, he obeyed Campbell's admittedly just order to timely submit a completed medical questionnaire, but he was unable to locate a treating physician. Dunbar also conceded in his response that the "[d]ouble jeopardy doctrine has no applicability to this cause."
The trial court granted the City's summary-judgment motion, and Dunbar now appeals both the granting of that motion and the denial of his own.
II. STANDARD OF REVIEW
In an appeal from the trial court's rulings on cross-motions for summary judgment, we determine all questions presented and render the judgment that the trial court should have rendered. Argonaut Ins. Co. v. Baker , 87 S.W.3d 526, 529 (Tex. 2002). We review the summary-judgment rulings de novo. Provident Life & Accident Ins. Co. v. Knott , 128 S.W.3d 211, 215 (Tex. 2003). To do so, we take all evidence favorable to the nonmovant as true, indulging every reasonable inference and resolving any doubts in its favor. Id.
An appeal to the district court of the Commission's decision is by trial de novo. TEX. LOC. GOV'T CODE ANN. § 143.015(b) (West 2008). "Trial de novo" usually means "a new trial on the entire case, on both questions of fact and issues of law, conducted as if there had been no trial in the first instance." Appraisal Review Bd. of Harris Cnty. Appraisal Dist. v. Spencer Square Ltd. , 252 S.W.3d 842, 845 (Tex. App.-Houston [14th Dist.] 2008, no pet.). In the context of an appeal from a Commission decision, however, a "trial de novo" means that the trial court determines "only the issues of whether the agency's rule is free of the taint of any illegality and is reasonably supported by substantial evidence." Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer , 662 S.W.2d 953, 956 (Tex. 1984) (quoting Fire Dep't of City of Fort Worth v. City of Fort Worth , 147 Tex. 505, 217 S.W.2d 664, 666 (1949) ). The agency is the primary factfinder, and "the question to be determined by the trial court is strictly one of law." Id.
III. TIMELINESS OF THE SUSPENSION
The question of law presented by Dunbar's first appellate issue is whether his suspension is void as untimely. The parties appear to agree that this issue is governed by Chapter 143, Subchapter G, of the Texas Local Government Code. See TEX. LOC. GOV'T CODE ANN. §§ 143.101 -.135 (West 2008 & Supp. 2017); see id. § 143.101(a) (stating that the subchapter applies to a municipality with a population of at least 1.5 million). The parties' disagreement arises from their differing focus on, and interpretation of, a few statutory provisions.
The proper construction of a statute is a question of law subject to de novo review. See TIC Energy & Chem., Inc. v. Martin , 498 S.W.3d 68, 74 (Tex. 2016). When interpreting a statute, our primary objective is to give effect to the legislature's intent. See TGS-NOPEC Geophysical Co. v. Combs , 340 S.W.3d 432, 439 (Tex. 2011) ; see also TEX. GOV'T CODE ANN. § 312.005 (West 2013). We identify that intent by looking first to the statute's plain language. See Lippincott v. Whisenhunt , 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). We do not consider statutory provisions in isolation, but read the statute as a whole. See In re Mem'l Hermann Hosp. Sys. , 464 S.W.3d 686, 701 (Tex. 2015) (orig. proceeding). A statute's clear and unambiguous language is determinative of the legislature's intent. See TIC Energy & Chem. , 498 S.W.3d at 74-75. We presume that the *750 legislature purposefully chose which words to include in the statute and which to omit. See Lippincott , 462 S.W.3d at 509.
In debating whether Dunbar's suspension is void, both sides rely on Texas Local Government Code section 143.117, which states,
The department head may suspend a fire fighter or police officer under this section only if the person violates a civil service rule. However, the department head may not suspend a fire fighter or police officer later than the 180th day after the date the department discovers or becomes aware of the civil service rule violation.
TEX. LOC. GOV'T CODE ANN. § 143.117(b) (emphasis added). If the suspension is imposed later than the 180th day after the date the department discovers or becomes aware of the violation, then "[t]he suspension is void and the fire fighter or police officer is entitled to the person's full pay." Id. § 143.117(d)(2). Dunbar was suspended on April 8, 2015, so the suspension was void for untimeliness only if the Department discovered or became aware of the rule violation before October 10, 2014. Although the relevant facts are undisputed, the parties disagree about how "the date the department discovers or becomes aware of the violation" is determined.
Dunbar argues that the suspension was untimely because the Department knew of his failure to return a completed medical questionnaire as early as April 23, 2014, when Chea emailed him a reminder that he had been required to return the questionnaire the day before, or as late as August 27, 2014, when the "Assessment Meeting" was held to address Dunbar's failure to comply with the medical-questionnaire requirement.
According to the City, the date when the Department discovers or becomes aware of a violation is when Staff Services receives a verified complaint under Section 143.123. The City concludes that the Department timely suspended Dunbar 162 days after the head of Staff Services received Henn's notarized memorandum.
We conclude that, under the correct reading of the relevant provisions of Chapter 143, Dunbar is correct: the Department was aware of the violation not later than August 2014, and thus, his suspension more than 180 days later is void.
A. Section 143.123 Addresses the Conduct of the Investigation, Not the Date When the Department Becomes Aware of the Violation.
In support of its position that the Department discovers or becomes aware of a violation when Staff Services receives a verified complaint, the City relies on section 143.123(f). To provide context for this discussion, we quote this subsection in full:
Before an investigator may interrogate a fire fighter or police officer who is the subject of an investigation, the investigator must inform the fire fighter or police officer in writing of the nature of the investigation and the name of each person who complained about the fire fighter or police officer concerning the matters under investigation. An investigator may not conduct an interrogation of a fire fighter or police officer based on a complaint by a complainant who is not a peace officer unless the complainant verifies the complaint in writing before a public officer who is authorized by law to take statements under oath. In an investigation authorized under this subsection, an investigator may interrogate a fire fighter or police officer about events or conduct reported by a witness who is not a complainant without disclosing the name of the witness. Not later than the 48th hour before the *751 hour on which an investigator begins to interrogate a fire fighter or police officer regarding an allegation based on a complaint, affidavit, or statement, the investigator shall give the fire fighter or police officer a copy of the affidavit, complaint, or statement. An interrogation may be based on a complaint from an anonymous complainant if the departmental employee receiving the anonymous complaint certifies in writing, under oath, that the complaint was anonymous. This subsection does not apply to an on-the-scene investigation that occurs immediately after an incident being investigated if the limitations of this subsection would unreasonably hinder the essential purpose of the investigation or interrogation. If the limitation would hinder the investigation or interrogation, the fire fighter or police officer under investigation must be furnished, as soon as practicable, a written statement of the nature of the investigation, the name of each complaining party, and the complaint, affidavit, or statement.
TEX. LOC. GOV'T CODE ANN. § 143.123(f).
As can be seen, section 143.123(f) nowhere mentions the 180-day deadline or how it is calculated. Section 143.123 instead concerns the conduct of an investigation after the Department is aware that misconduct has been alleged. See id. § 143.123(a)(2) (defining "investigation" as "an administrative investigation, conducted by the municipality, of alleged misconduct by a fire fighter or police officer that could result in punitive action against that person"). It addresses the circumstances under which an investigator may or may not "interrogate a fire fighter or police officer who is the subject of an investigation," and the information that must be provided or that may be withheld. A later subsection additionally provides that if the department head or any investigator violates section 143.123, then any punitive action will be reversed and the evidence excluded in any proceeding against the firefighter or police officer. See id. § 143.123(k).
Section 143.123(f) does not equate the filing of a verified complaint with the date that the Department "discovers or becomes aware of" the violation as required by section 143.117. Moreover, for the reason explained below, the sentence on which the City relies does not apply to this case at all.
B. No Verification Was Required Because There Was No "Complaint by a Complainant."
By its unambiguous language, section 143.123(f) requires verification only of a "complaint by a complainant." The City appears to have mistakenly assumed that, as used here, "complainant" means "the person making the complaint." In common parlance, and even in some statutes, that would be true. See Colorado County v. Staff , 510 S.W.3d 435, 451-52 (Tex. 2017) (discussing Texas Government Code section 614.022 and contrasting it with Texas Local Government Code section 143.123 ). But it is not true of this provision. See ids="12372418" index="19" url="https://cite.case.law/sw3d/510/435/#p451">id.
When the legislature has defined a term, we must use the statutory definition. See Univ. of Tex. Sw. Med. Ctr. at Dall. v. Gentilello , 398 S.W.3d 680, 683 (Tex. 2013). And in section 143.123, the legislature defined "complainant" to mean "a person claiming to be the victim of misconduct by a fire fighter or police officer." TEX. LOC. GOV'T CODE ANN. § 143.123(a)(1). Thus, the legislature chose to use "complainant" in a manner similar to that term's use in criminal law. Cf. Flynn v. State , 667 S.W.2d 235, 238 (Tex. App.-El Paso 1984, pet. granted) ("[T]he denomination 'complainant' is viewed as a term of art in the criminal law area, referring to the alleged victim of the offense."), aff'd , 707 S.W.2d 87 (Tex. Crim. App. 1986). This is a much narrower meaning than "the person who complains," a *752 phrase that does not distinguish between an offense for which there is a "victim" and a mere administrative violation for which there is none. Because misconduct may or may not result in a "victim," section 143.123(f) speaks both broadly of a "person who complained" and narrowly of "a complainant." The two expressions are not synonymous, and the statute refers to interrogations based not only on verified "complaints by complainants," but also to interrogations "based on a complaint, affidavit, or statement." See TEX. LOC. GOV'T CODE ANN. § 143.123(f).
As the Texas Supreme Court has explained, "[S]ection 143.123 appears to contemplate investigation of complaints made by persons other than 'complainants' and to use the special definition of that term to differentiate between processes that apply depending on the source of the information under investigation." Staff , 510 S.W.3d at 452. And by replacing the word "complainant" with its statutory definition, it becomes apparent that the sentence in section 143.123(f) on which the City relies is inapplicable to this case:
An investigator may not conduct an interrogation of a fire fighter or police officer based on a complaint by a [person claiming to be the victim of misconduct by a fire fighter or police officer] who is not a peace officer unless the [person claiming to be the victim of misconduct by a fire fighter or police officer] verifies the complaint in writing before a public officer who is authorized by law to take statements under oath.
In this case, there is no complaint by "a person claiming to be a victim of misconduct" by Dunbar. Dunbar is alleged only to have violated the Department's rule and Campbell's order requiring him to timely return a physician-completed medical questionnaire. Section 143.123(f) 's requirement of a verified complaint accordingly is inapplicable.
In an attempt to buttress its position in its summary-judgment motion, the City added, "Furthermore, [the Department's] policy regarding complaints states that an investigation of allegations of employee misconduct in violation of ... [Department] Rules and Regulations, Bulletin, Orders, Directives[,] Policies, Procedures and/or Guidelines requires a verified complaint in compliance with Section 143.123 of the Tex. Loc. Gov't Code." (emphasis added). The City attached the Department's "complaints" policy to its summary-judgment motion, but section 3.03 of that document defines "complaint" as "[a] written or verbal statement by a citizen or employee complaining of any misconduct by an employee of the Department." (emphasis added). Thus, not all "complaints" are "verified complaints." But when a complaint is made by a "complainant"-a person claiming to be the victim of the alleged misconduct-the Department's policy requires that "[t]he signature of the complainant should be affixed on the complaint and certified by a notary public at the time of filing or prior to such filing, in compliance with Texas Local Government Code 143.123. " Thus, the Department's policy requires compliance with section 143.123 but does not purport to expand section 143.123 's definition of complainant or to require a verified complaint where section 143.123 does not.
We accordingly conclude that the 180-day deadline to suspend Dunbar began to run not when a Staff Services received a verified complaint, but when the Department discovered or became aware of the rule violation. See ids="12372418" index="24" url="https://cite.case.law/sw3d/510/435/#p451">id. § 143.117(b).
C. Henn's verified complaint that Dunbar violated a re-issued order did not restart the 180-day deadline for imposing suspension.
Dunbar argues that the Department impermissibly attempted to "restart the *753 clock" by alleging a second violation connected to the first violation. Again, we agree with Dunbar.
Situations such as this are governed by Texas Local Government Code section 143.117(b), which provides as follows:
If, during an investigation of an alleged civil service rule violation, it is alleged that the fire fighter or police officer under investigation committed another violation of a civil service rule connected with the first alleged violation, the 180-day period prescribed by this subsection does not begin again for purposes of a suspension of the fire fighter or police officer if the second violation in question does not involve untruthfulness or refusal to obey a valid order to make a statement, and therefore the department head may not suspend a fire fighter or police officer for the second violation later than the 180th day after the date the department discovers or becomes aware of the original violation.
Id. That is exactly what has happened here.
The City contends that Dunbar violated Assistant Fire Chief Lisa Campbell's August 27, 2014 order, which read as follows:
Dear Senior Captain Dunbar:
This memorandum is to advise you to ensure the attached medical questionnaire is completed and returned to the HFD Risk Management Office, 600 Jefferson, Suite 646, Houston, Texas 77002, no later than September 27, 2014. The medical questionnaire is to determine your duration of recovery and should be completed by your treating physician. If you cannot comply with this deadline, immediately contact me to agree to a revised date.
If you have any questions or concerns, the Risk Management staffs and I are available to assist you. You may contact Risk Management anytime at [phone number].
Lisa Campbell
Assistant Fire Chief
Houston Fire Department
But it is undisputed that Campbell sent the identical letter to Dunbar on April 4, 2014; the only difference between the two is that in the earlier letter, the underlined deadline was April 22, 2014.
The Department knew of Dunbar's failure to comply with the identical order of April 4, 2014, because on August 13, 2014, Acting Fire Chief Galvan advised Dunbar that the Department would conduct an Assessment Meeting on August 27, 2014 "to discuss the medical questionnaire that remains outstanding." Thus, the Department had become aware by August 13, 2014, that Dunbar had not submitted the medical questionnaire as he had been required and ordered to do by April 22, 2014.[2] If any doubt remained about whether Dunbar might have already returned the completed medical questionnaire, that doubt was removed at the Assessment Meeting, which resulted in Campbell reissuing the same letter, changing only the dates.
But if Campbell's second letter of August 2014 was an order, the violation of which made Dunbar susceptible to suspension, then so too was Campbell's original letter of April 2014. And because the violation of the second order involved neither "untruthfulness" nor a "refusal to obey a valid order to make a statement," the 180-day *754 deadline did not begin again when the Department discovered that Dunbar had violated that order as well. Instead, the 180-day deadline ran without interruption from the date when the Department discovered or became aware that Dunbar violated Campbell's original order of April 2014.
Because the Texas Local Government Code barred the Department from suspending Dunbar more than 180 days after it discovered or learned of Dunbar's rule violation, the Commission's affirmance of the void suspension in contravention of section 143.117 is not "free of the taint of any illegality." Cf. BankDirect Capital Fin., LLC v. Plasma Fab, LLC , 519 S.W.3d 76, 85 (Tex. 2017) (rejecting the Code Construction Act's invitation to consider extrinsic factors such as the "administrative construction of the statute" when deciding the meaning of an unambiguous statute). We accordingly sustain Dunbar's first issue. In light of this ruling, Dunbar's remaining issues are moot.
IV. DISPOSITION
Dunbar asks in his conclusion and prayer for relief that, in addition to reversing the grant of summary judgment to the City, we grant his own motion for summary judgment and render judgment in his favor. Although not listed as a distinct issue, we conclude that the denial of Dunbar's summary-judgment motion is properly before us. The arguments in Dunbar's brief address the reversal of the City's motion for summary judgment, and the record shows that Dunbar's response to the City's motion and his own summary-judgment motion presented the same dispositive issues. Specifically, Dunbar has consistently and correctly argued-in his summary-judgment motion, in his response to the City's motion, and on appeal-that his suspension was imposed outside of the 180-day limit mandated by the Texas Local Government Code and that the August 2014 order to submit a completed medical questionnaire was not a new order but was the same as the April 2014 order. Similarly, the City's position-stated in its summary-judgment motion, in its response to Dunbar's motion, and on appeal-is based on a misreading of the law that equates Departmental knowledge of a rule violation with Staff Services' receipt of a verified complaint and that ignores the uncontroverted fact that Dunbar failed to comply with Campbell's first order in April 2014.
When, as here, the parties file cross-motions for summary judgment on overlapping issues, and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by each party, determine all questions presented and "render the judgment that the trial court should have rendered." FM Props. Operating Co. v. City of Austin , 22 S.W.3d 868, 872 (Tex. 2000) ; City of Houston v. Hous. Firefighters' Relief & Ret. Fund , 502 S.W.3d 469, 473 (Tex. App.-Houston [14th Dist.] 2016, no pet.). Dunbar accordingly is entitled to the relief he seeks.
Dunbar's summary-judgment motion also included a request that "any and all references to any suspension be removed from [his] personnel record." This request is supported by Texas Local Government Code section 143.1214 :
(a) The human resources director for the department promptly shall order that the records of a disciplinary action that was taken against a fire fighter ... be expunged from each file maintained on the fire fighter ... by the department if the disciplinary action was entirely overturned on appeal by ... a court of competent jurisdiction. Documents that must be expunged under this subsection include all documents that indicate disciplinary action was recommended or taken against the fire fighter ..., such as the recommendations of a *755 disciplinary committee or a letter of suspension.... This subsection does not require that records of an internal affairs division or other similar internal investigative division be expunged.
(b) The department shall maintain an investigatory file that relates to a disciplinary action against a fire fighter ... that was overturned on appeal, or any document in the possession of the department that relates to a charge of misconduct against a fire fighter ..., regardless of whether the charge is sustained, only in a file created by the department for the department's use....
TEX. LOC. GOV'T CODE ANN. § 143.1214(a), (b) (West Supp. 2017).
We therefore reverse the trial court's judgment and instead render judgment that the suspension is void and that records of the disciplinary action must be expunged from the Department's records in accordance with Texas Local Government Code section 143.1214.
V. CONCLUSION
Because the evidence conclusively established that Dunbar's suspension was imposed more than 180 days after the Department discovered or became aware of his failure to submit a physician-completed medical questionnaire as required by Department rules and by Campbell's order of April 4, 2014, the suspension is void. As a matter of law, no verified complaint was required before the 180-day period began to run, and neither Henn's written memorandum nor her later verification of that document caused the 180-day period to begin anew. Further, and also as a matter of law, the Department did not restart the 180-day period by reissuing Campbell's original order with a new deadline. Because Campbell's August 2014 order is connected to her original, April 2014 order, and because Dunbar's violation of the second order involves neither untruthfulness nor the refusal to obey a valid order to make a statement, the 180-day period began to run when the Department became aware of Dunbar's failure to submit a medical questionnaire by the April 2014 deadline stated in the original order rather than when it discovered his failure to submit the medical questionnaire by the September 2014 deadline stated in the re-issued order. Inasmuch as the Department was aware of Dunbar's violation in August 2014, its suspension of Dunbar more than 180 days later violated Texas Local Government Code section 143.117 and is void.
We accordingly render judgment in Dunbar's favor, and in accordance with Texas Local Government Code section 143.1214, order the City to cause the records of this disciplinary action expunged from each file maintained by the Department, with the exception of any internal investigatory file or records maintained by an internal investigative division.

See Tex. Loc. Gov't Code Ann. § 143.015(a) (West 2008).

Although the parties have not addressed the question of whether the knowledge of various personnel in Risk Management is "Departmental" knowledge, there can be no such question about the knowledge of then-Acting Fire Chief Galvan, for he was the head of the Department at that time. See Tex. Loc. Gov't Code Ann. § 143.003(2) (West 2008) (" 'Department head' means the chief or head of a fire or police department or that person's equivalent, regardless of the name or title used.").