**Affirmed and Opinion filed February 8, 2022.**



In The

# Fourteenth Court of Appeals

## NO. 14-20-00565-CV

**THE CITY OF HOUSTON AND FIREFIGHTERS' AND POLICE OFFICERS' CIVIL SERVICE COMMISSION OF THE CITY OF HOUSTON, Appellants**

**V.**

**PETE CORTEZ, Appellee**

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-39908**

## O P I N I O N

The City of Houston's Fire Chief terminated firefighter Pete Cortez after Cortez failed a drug test. Cortez appealed to the Firefighters' and Police Officers' Civil Service Commission for the City of Houston ("the Commission"). The Commission upheld the termination, and Cortez appealed the ruling to district court. Presented with cross-motions for summary judgment, the district court granted Cortez's motion, denied the City's and the Commission's motion, reversed

the Commission's decision, and reinstated Cortez. The City and Commission now appeal.

In the dispositive issue before us, Cortez argues that the district court's judgment is correct because the Commission upheld an arbitrary act by the City and therefore the result is "tainted by illegality." The City's termination decision was arbitrary, Cortez says, because the City violated the civil service rules it purported to enforce by failing to notify Cortez of his right to request a retest with an independent lab after the positive test result. The summary judgment record establishes conclusively that the City's decision was arbitrary or a clear abuse of applicable civil service rules. Thus, the ultimate Commission decision upholding Cortez's termination is not free from the taint of illegality.

We therefore affirm the trial court's judgment.

## Background

Cortez is a former Engineer Operator with the City of Houston Fire Department ("HFD"). In January 2019, while employed by HFD, Cortez was randomly selected to take a urinalysis drug test pursuant to HFD's controlled substance and alcohol abuse policy.[1] The result was "negative and diluted."[2] Cortez was ordered to retest with a hair sample.[3] According to the Executive

---

[1] The policy is set forth in the Mayor's Executive Order No. 1-12, "Amended Controlled Substance & Alcohol Abuse" (the "Executive Order"). The Executive Order is expressly incorporated into HFD's rules and regulations, which have been adopted by the Commission and included in civil service rules applicable to HFD. *See* Tex. Loc. Gov't Code §§ 143.001-.403.

[2] The Executive Order defines "Dilute Sample" as "A urine specimen where the concentration has been reduced by the drinking of excess fluids or by other means."

[3] *See* Executive Order § 8.25.3 ("[I]n the case of HFD . . . classified personnel," such as Cortez, "where a drug screen is reported as both negative and diluted, the employee may be re-tested by use of hair at the department's expense.").

2

Order, hair samples are tested twice—the hair itself and a "wash" applied to the hair sample. Cortez's hair sample tested positive for cocaine.

Portions of the Executive Order reference the responsibility of the City's Medical Review Officer to notify the employee of his or her right to request a "referee test" from a portion of the original sample at another laboratory certified by the federal Department of Health and Human Services. The parties dispute whether these provisions apply to Cortez, and we discuss their arguments in detail below. The parties agree that no further testing was performed.

HFD Investigator Patrick Curtis began an investigation into Cortez's positive test. Cortez provided a statement, in which he asserted that his positive result had to be a result of exposure to unknown drugs when responding to a house fire in July 2018. Following its investigation, HFD concluded that Cortez violated the department's substance abuse policy. Employees who test positive for cocaine are subject to termination or indefinite suspension. *See* Executive Order §§ 12.1.15, 13.1. Cortez attended a *Loudermill*[4] meeting, at which HFD Fire Chief Samuel Peña informed Cortez of the charge and evidence against him, as well as the investigators' recommendation that Cortez be indefinitely suspended. At that meeting, Cortez reiterated his belief that his test result was attributable to the July 2018 house fire.

---

[4] *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (holding that prior to any termination, a public employer must furnish the employee with "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story"); *see also City of Houston v. Morris*, 23 S.W.3d 505, 507 n.1 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ("A *Loudermill* hearing is held after a determination is made by the City regarding an employee's alleged violations. The employee, any attorneys, and those who investigated the alleged violations attend the hearing. The purpose of the hearing is to give the employee an opportunity to present information the employee may feel is helpful to his or her case.").

3

After the *Loudermill* meeting, Chief Peña asked the City's Medical Review Officer, Dr. Xavier Castillo, if Cortez's positive test result could have been caused by exposure to drugs during the July 2018 house fire. Dr. Castillo opined that such a scenario was not likely because the level of cocaine found in Cortez's hair sample indicated personal ingestion, rather than environmental or incidental exposure. Chief Peña suspended Cortez indefinitely, which is effectively a termination. Cortez appealed to the Commission,[5] which conducted an evidentiary hearing and upheld Cortez's termination.

Cortez appealed the Commission's ruling to a Harris County district court.[6] Cortez as the plaintiff, and the City and Commission as defendants, filed competing motions for summary judgment to reverse or uphold, respectively, the Commission's decision. In his motion, Cortez argued that the Commission's ruling was "tainted by illegality" and should be reversed for essentially four reasons: (1) Investigator Curtis committed perjury while testifying before the Commission; (2) the City violated certain statutory provisions, such as a statutory prohibition against recording a *Loudermill* meeting without prior notice of an intent to record;[7] (3) the City violated its internal guidelines and the U.S. Constitution's Due Process Clause by failing to investigate Cortez's report of drug exposure after the July 2018 house fire; and (4) the City violated the Executive Order and the Due Process Clause by failing to notify Cortez of his right to request a referee test.

For their part, the defendants argued that the Commission's ruling was untainted by any illegality and was supported by substantial evidence.

---

[5] *See* Tex. Loc. Gov't Code § 143.120.

[6] *See id.* §§ 143.015(a), 143.121.

[7] *See id.* § 143.123(i).

4

The trial court denied the defendants' motion and granted Cortez's motion without specifying grounds. In its final judgment, the court overturned the indefinite suspension, ordered Cortez reinstated with back pay and seniority credit, and awarded Cortez his attorneys' fees. The City and Commission appeal.

## Standard of Review

In an appeal from the trial court's rulings on cross-motions for summary judgment, we determine all questions presented and render the judgment that the trial court should have rendered. *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 529 (Tex. 2002). "On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law." *City of Richardson v. Oncor Elec. Delivery Co.*, 539 S.W.3d 252, 259 (Tex. 2018). We review the summary judgment rulings de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). To do so, we take all evidence favorable to the nonmovant as true, indulging every reasonable inference and resolving any doubts in its favor. *Id.*

An appeal to the district court of a civil service commission's decision is by "trial de novo." Tex. Loc. Gov't Code § 143.015(b). A trial de novo in this context means that the trial court determines "'only the issues of whether the agency's rule is free of the taint of any illegality and is reasonably supported by substantial evidence.'" *Firemen's & Policemen's Civ. Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984) (quoting *Fire Dep't of City of Fort Worth v. City of Fort Worth*, 217 S.W.2d 664, 666 (Tex. 1949)). The trial court has a dual role. On one hand, the court must hear and consider evidence to determine whether reasonable support for the administrative order exists. *Id.* On the other hand, the agency itself is the primary fact-finding body, and the question to be determined by the trial court is strictly one of law. *Id.* Under this approach, a

civil service commission's ruling enjoys a "presumption of validity" in the trial court. *Richardson v. City of Pasadena*, 513 S.W.2d 1, 3 (Tex. 1974).

**Analysis**

Appellants challenge all grounds presented in Cortez's summary judgment motion. When, as here, the trial court grants a motion for summary judgment without specifying the grounds on which it relies, we affirm if any of the grounds presented are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872-73 (Tex. 2000); *Reule v. Colony Ins. Co.*, 407 S.W.3d 402, 405 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). For the reasons explained below, we conclude that the trial court's judgment is supportable on at least one of the grounds Cortez raised in his motion. Because our conclusion is dispositive of this appeal, we confine our opinion solely to the ground addressed. *See* Tex. R. App. P. 47.1.

A. **Substantial Evidence Review and the "Taint of Illegality"**

In his summary judgment motion and on appeal, Cortez contends that his indefinite suspension was tainted by illegality because the City[8] violated the Executive Order by failing to notify him of his option to request a referee test. As Cortez posits, the City suspended him for violating the Executive Order regarding drug exposure when the City itself violated the same order. According to Cortez, "[t]he proposition that [the Executive Order] applies to Cortez but not the Appellants creates an arbitrary, unpredictable, and unrestrained imposition of governmental power . . . and taints Cortez's indefinite suspension with illegality." For this reason, Cortez says the trial court correctly granted summary judgment in his favor.

---

[8] For simplicity's sake, we refer to the City, HFD, and the Fire Chief, collectively as the "City."

Appellants dispute Cortez's entitlement to a referee test under the Executive Order. Alternatively, they urge that the failure to notify Cortez of that option does not taint the Commission result with any illegality.

We begin by examining further how courts have interpreted and applied substantial evidence review in an appeal from a civil service commission decision. Under this standard, the party disputing the result has the burden to show that the agency's decision was not based on substantial evidence. *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986). The reviewing court may not set aside such a decision because it would reach a different conclusion; it may only do so if that decision was made without regard to the facts or the law and thus was unreasonable, arbitrary, capricious, or void.[9] Absent arbitrary action, a commission's ruling should not be disturbed. *See Smith v. City of Houston*, 552 S.W.2d 945, 947 (Tex. App.—Houston [1st Dist.] 1977, no writ). The reviewing court is concerned only with the reasonableness of the administrative order, not its correctness. *Brinkmeyer*, 662 S.W.2d at 956; *Bradford v. Pappillion*, 207 S.W.3d 841, 844 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

In most cases, courts have focused their inquiry on the commission's actions or procedures in conducting its hearing; however, the public employer's pre-

---

[9] *See, e.g.*, *Mercer*, 701 S.W.2d at 831; *Brinkmeyer*, 662 S.W.2d at 956 (courts should not interfere with internal disciplinary actions absent "clear abuse of authority"); *Bd. of Firemen's Relief & Retirement Fund Trustees v. Marks*, 242 S.W.2d 181, 183 (Tex. 1951) (employee "must assume the burden of satisfying the courts that the administrative decision is illegal, arbitrary, or capricious"); *Fire Dep't of City of Fort Worth*, 217 S.W.2d at 666 (an agency must not exercise its power arbitrarily or capriciously); *Dunbar v. City of Houston*, 557 S.W.3d 745, 754 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (commission decision affirming a void suspension—void, because the suspension was imposed too late by statute—resulted in taint of illegality); *Heard v. Incalcaterra*, 702 S.W.2d 272, 276 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

termination conduct is likewise subject to scrutiny.[10]   Illegal, arbitrary, or capricious acts by a public employer will not survive court review on appeal from a commission decision.[11]   As these cases illustrate, when a public employer's challenged action is arbitrary or capricious, or a clear abuse of authority, then the civil service commission's ultimate ruling upholding the challenged action is not free from the taint of illegality.  Arbitrary, capricious, or illegal acts hence destroy the presumption of validity normally accompanying commission rulings.  *See Firemen's & Policemen's Civ. Serv. Comm'n of City of Port Arthur v. Hamman*, 404 S.W.2d 308, 312 (Tex. 1966).

## B.    Did the Executive Order require the Medical Review Officer to notify Cortez of his right to a referee test?

We turn to whether the Medical Review Officer, after learning the hair sample tested positive for cocaine, was obligated to notify Cortez of his option to obtain a referee test, as Cortez contends.

The City could suspend Cortez indefinitely only upon violation of a civil service rule.  *See* Tex. Loc. Gov't Code § 143.119.  Here, according to Chief Peña's letter, Cortez violated Rule 13, Section 6, Subsection (d) of the City of

---

[10] *See Bexar Cty. Sheriff's Civ. Serv. Comm'n v. Davis*, 802 S.W.2d 659, 662-63 (Tex. 1990) (examining sheriff's pre-termination actions); *City of San Antonio v. Poulos*, 422 S.W.2d 140, 144-45 (Tex. 1967) (when police chief did not comply with procedure to properly charge a violation of a civil service rule, commission's ruling upholding dismissal was arbitrary); *City of Carrollton v. Popescu*, 806 S.W.2d 268, 272 (Tex. App.—Dallas 1991, no writ) (city failed to perform all conditions precedent to removal of employee); *Smith*, 552 S.W.2d at 947; *Cash v. City of Houston*, 426 S.W.2d 624, 627 (Tex. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.) (examining whether acts of fire chief and commission were arbitrary or capricious).

[11] *See Firemen's & Policemen's Civ. Serv. Comm'n v. Kennedy*, 514 S.W.2d 237, 240 (Tex. 1974); *see also Long v. Wichita Falls*, 749 S.W.2d 268, 271 (Tex. App.—Fort Worth 1988, writ denied); *Firemen's & Policemen's Civ. Serv. Comm'n v. Bonds*, 666 S.W.2d 242, 245 (Tex. App.—Houston [14th Dist.] 1984, writ dism'd); *Poulos*, 422 S.W.2d at 144-45.

Houston Civil Service Commission Rules Governing Members of the Fire and Police Departments, which provides:

SECTION 6 - CAUSES OF DISMISSALS AND SUSPENSIONS

No Fireman or Policeman shall engage in or be involved in any one of the following acts or conduct and the same shall constitute cause for the removal from service or the suspension of a Fireman or Policeman.

(d) That the employee has violated any of the provisions of the Charter of the City of Houston or has violated any of the provisions of the Firemen's Civil Service laws, or the rules and regulations of the Civil Service Commission, or the rules or special orders of the Fire Department.

Chief Peña's letter stated that Cortez had "violated certain provisions of the rules and regulations of the City of Houston Fire Department which have been adopted by the Civil Service Commission of the City of Houston and made applicable herein under Rule 13, Section 6." Specifically, Chief Peña identified section 7.08, "Drug Usage," of the Houston Fire Department Guidelines - Rules and Regulations. Section 7.08 provides:

In compliance with the Mayor's Executive Order 1-12, revised September 26, 2014 and any subsequent revisions of the same; members shall not use or possess any illegal drug or controlled substance, on or off duty, except as prescribed by and under the supervision of a licensed doctor or dentist. The use or possession of any illegal drug or substance, or any participating activity involving illegal drugs or substance on or off duty is strictly prohibited.

(Internal footnote omitted).

Chief Peña's letter also referred to and quoted from the Executive Order, which prohibits City employees from using or possessing controlled substances, including cocaine, and provides that employees "shall not . . . [t]est positive for . . . Cocaine." Chief Peña ultimately terminated Cortez's employment because he

9

determined Cortez violated section 7.08 of the HFD Rules and Regulations and the Executive Order.

Before he was terminated, Cortez was not notified of an option to request a referee test. On this point, the Executive Order provides in relevant part:

8.25 Any attempt to alter the outcome of an alcohol and/or controlled substance urine or oral fluids test process or inhibit the testing process shall be viewed as an adulteration of the test process or a refusal to test. The MRO [Medical Review Officer] is responsible for reviewing each controlled substance test in which laboratory findings indicate the presence of abnormal test results. Abnormal test results indicating alteration or dilution will result in an immediate, next morning, controlled substance retest and/or an alternate hair test to occur 10 days from the initial test. The guidelines for addressing dilute, non-DOT urine specimens are as follows:

8.25.1 If a drug screening is reported as both negative and diluted, the employee will be contacted and requested to provide an immediate re-collection. The result of the second test becomes the test of record; or if the employee elects yet another test by use of hair or oral fluids, at his expense, the hair or oral fluids test results becomes the test of record.

8.25.2 Hair sample analysis drug screens are tested twice, for both the hair sample and the wash done on the hair sample, before a confirmed positive is reported to the City. Therefore, any hair analysis drug screen reported to the city as a positive for prohibited drugs shall be considered a confirmed positive. All positive hair tests will be verified by the MRO.

8.25.3 In the case of HFD and HPD classified personnel, probationary personnel, Academy trainees, and applicants, where a drug screen is reported as both negative and diluted, the employee may be re-tested by use of hair at the department's expense.

Other provisions of the Executive Order provide:

6.2     The Medical Review Officer is responsible for: . . .

      6.2.4      Referring those with a confirmed positive controlled substance test to the HRPEDT for information or their option to obtain, at their own expense, a referee test to retest the original sample at a different certified laboratory.

8.11    If the MRO verifies the positive result after review with the employee, the MRO shall notify the employee, specify the controlled substance(s), and explain that the employee has three working days (M-F) from such notification to request a referee test (split sample retest) from a portion of the original sample at another laboratory certified by the federal DHHS [the federal Department of Health and Human Services].

The Executive Order defines "Referee Test" as "[a] split sample test conducted to confirm the presence of a controlled substance in a sample that has been determined positive by the City's MRO. The test is conducted on a portion of the employee's or applicant's original sample by a certified federal DHHS laboratory different from the laboratory conducting the original controlled substance test. The referee test shall be performed at the expense of the applicant or employee."

Construing the Executive Order's plain language,[12] under section 8.25.3, Cortez, as HFD classified personnel, was to "be re-tested by use of hair at the department's expense," after his drug screen was reported as both negative and diluted. Under section 8.25.2, Cortez's hair sample was then tested twice before a "confirmed positive" result was reported to the City. All positive hair tests, such

---

[12] We construe civil service rules in accordance with their plain language. *E.g.*, *Bexar Cty. Civ. Serv. Comm'n v. Casals*, 63 S.W.3d 57, 60-61 (Tex. App.—San Antonio 2001, no pet.) (interpreting and applying "plain and unambiguous" language of county civil service commission rule).

11

as Cortez's, "will be verified by the MRO," Dr. Castillo. As the Medical Review Officer, Dr. Castillo, after verifying the confirmed positive hair test, was responsible under section 6.2.4 for referring Cortez to HRPEDT (the Human Resources Physical Exam/Drug Testing Facility) for information on his option to obtain, at his expense, "a referee test to retest the original sample." Section 8—entitled "SCREENING/TESTING PROCEDURES"—addresses more specifically the Medical Review Officer's duty after verifying a positive result. Section 8.11 obligated Dr. Castillo to notify Cortez that he tested positive for cocaine and "explain that [Cortez] has three working days . . . to request a referee test (split sample retest) from a portion of the original sample." These provisions, read together as a cohesive whole, make plain that Cortez was entitled to notification of his right to request, at his expense, a referee test of the original sample providing the positive result—i.e., his hair sample.

The City proffers a different interpretation of the Executive Order. According to the City, once Cortez provided a hair sample following his "negative and diluted" urinalysis, that hair test result became "the test of record," and no further testing was required to be performed or offered. Further, the City argues that because section 8.11, which imposes a duty on the Medical Review Officer to inform employees of their right to request a referee test, references the DHHS—and because another portion of the Executive Order states that urinalyses must conform to DHHS standards[13]—section 8.11 only applies to urinalysis testing, not hair testing, as in Cortez's case.

The City's interpretation is not reasonable. The City's reliance on "the test of record" language in section 8.25.1 ignores the other parts of section 8.25,

---

[13] Section 8.9 states, "The procedures for collection of urine samples must meet the minimum requirements of the federal DHHS."

specifically that HFD classified personnel are to be retested by the use of hair (section 8.25.3) and that the Medical Review Officer is to verify positive hair tests (section 8.25.2). Further, the fact that the Executive Order states that urinalyses must conform to DHHS requirements does not mean that *all* references to DHHS, including section 8.11, cabin those sections only to urinalysis testing to the exclusion of hair testing. In fact, the Executive Order states that a "Collection Site" is "[a] designated facility that meets . . . the federal Department of Health and Human Services (DHHS) guidelines for collection of urine *and/or hair samples* for controlled substance testing." By this definition, DHHS guidelines may apply to both urine and hair samples.

Under the Executive Order's plain text, Dr. Castillo was required to notify Cortez of his right to request a referee test after he verified Cortez's positive hair test. It is undisputed that Cortez was not told of his right to a referee test, and no referee test was performed.

Citing Dr. Castillo's testimony from the Commission hearing, the City argues that hair samples are not typically split for referee testing absent a specific request and notes that, in Cortez's case, an insufficient amount of hair remained after the initial test to perform a referee test. If that is true, Cortez should not bear the consequence. As the Executive Order provides for an employee's right to request a referee test after being notified of a positive initial result, the City is best situated to communicate to the collection site the need for adequate sample quantities in the event an employee exercises the right to request a referee test after the test is completed.

13

**C.    Is the City's failure to comply with the Executive Order arbitrary action resulting in a taint of illegality?**

An arbitrary act is one that is taken capriciously or at pleasure, and not according to reason or principle. *See Webb v. Dameron*, 219 S.W.2d 581, 584 (Tex. App.—Amarillo 1949, writ ref'd n.r.e.); *see also* "Arbitrary," Black's Law Dictionary (11th ed. 2019) (definition includes, among other things, "Depending on individual discretion; of, relating to, or involving a determination made without consideration of or regard for facts, circumstances, fixed rules, or procedures").[14] An abuse of discretion occurs when a decision is made "without reference to any guiding rules and principles." *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1986).

Cortez proved conclusively the City's violation of certain civil service rules adopted by the Commission pursuant to statute. The Executive Order applies to all city employees (except elected officials), including the Medical Review Officer. The City's effective choice to observe some applicable civil service rules but not others falls squarely within the common understanding of the term "arbitrary." The City's failure to fully perform all conditions precedent to removal is either clear abuse by the City or constitutes an arbitrary or capricious act. *See Popescu*, 806 S.W.2d at 271-72; *Smith*, 552 S.W.2d at 947. When a city violates a civil service rule that exists to provide procedural safeguards for the charged employee's benefit, then the ultimate commission decision upholding the city's suspension is tainted by the city's arbitrary or illegal action. A city's failure to

---

[14] "Arbitrary" is also defined as:

> Depending on individual discretion and not fixed by law; marked by or resulting from the unrestrained and often tyrannical exercise of power; existing or coming about seemingly at random or by chance or as a capricious and unreasonable act of will.

Merriam-Webster Dictionary 59 (10th ed. 1993).

consistently enforce or follow civil service rules undermines the presumption of validity normally accompanying commission rulings. Thus, we conclude Cortez established conclusively that the Commission's result is not free from the taint of illegality.[15]

Additionally, we base our holding to some extent on the importance of the particular procedural safeguard at issue and its relationship to the interest of avoiding an erroneous dismissal. The civil service rule the City violated goes to the heart of the determinative question: whether in fact the evidence establishes a drug violation by Cortez. If the Medical Review Officer had informed Cortez of his right to seek such a test, if Cortez had exercised that right, and if the result was negative, then that result may have provided Cortez an additional basis to refute the charge for dismissal.

For these reasons, we hold that the City's failure to comply with its obligation under the Executive Order to notify Cortez of his option to pay for a referee test was arbitrary and thus the ultimate Commission decision upholding the termination is not free from the "taint of illegality." The trial court did not err in granting Cortez's motion for summary judgment on this basis.

---

[15] We express no opinion on Cortez's alternative argument that the City's failure to notify him of his right to request a referee test violated his due process rights under the Fourteenth Amendment to the U.S. Constitution.

## Conclusion

We affirm the trial court's summary judgment in Cortez's favor. We need not address any of the remaining grounds asserted in Cortez's motion for summary judgment, nor the grounds in the City's cross-motion. *See* Tex. R. App. P. 47.1.


/s/  Kevin Jewell
    Justice


Panel consists of Justices Jewell, Bourliot, and Poissant.