

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-22-00329-CV

---

IN RE WESTCHESTER SURPLUS LINES INSURANCE COMPANY, ET AL., RELATORS

---

ORIGINAL PROCEEDING

---

July 10, 2023

MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Relators (hereinafter Insurers),[1] have filed a petition for writ of mandamus with this

Court seeking an order directing Respondent, the Honorable William C. Sowder, to vacate

---

[1] Insurers allege to be the property insurers of real party in interest, Lubbock Independent School District. According to a statement in the petition for mandamus, they are: "First Specialty Insurance Corporation, now known as 'Swiss Re Corporate Solutions Capacity Insurance Corporation,' Colony Insurance Company, Crum & Forster Specialty Insurance Company, Falls Lake Fire and Casualty Insurance Company, Argonaut Management Services, Inc., Underwriters at Lloyd's, London (Canopius Syndicate 4444), Everest Indemnity Insurance Company, Landmark American Insurance Company, Underwriters at Lloyd's, London (Argo Syndicate 1200), Underwriters at Lloyd's, London (Brit Syndicate 2987), Underwriters at Lloyd's, London (Brit Syndicate 2988), Evanston Insurance Company, Arch Specialty Insurance Company, Western World Insurance Company, Lexington Insurance Company, Mitsui Sumitomo Insurance Company Of America, Scottsdale Insurance Company, and Westchester Surplus Lines Insurance Company."

First Specialty Insurance Corporation and Argonaut Management Services, Inc., are alleged to join Insurers' Petition, subject to certain limitations. Everest Indemnity Insurance Company is allegedly named improperly in this suit as "Everest Insurance Company." For purposes of identity in addressing this motion, we define "Insurers" as each of the foregoing entities. We express no opinion as to the sufficiency of the limitations or names alleged by any party.

his November 1, 2022 order denying their plea in abatement and to enter an order of abatement. Real party in interest is the Lubbock Independent School District (LISD), which filed a response to Insurers' petition at our request. Insurers filed a reply. For the reasons discussed herein, we conditionally grant Insurers' petition.

**Background**

Insurers are alleged to provide layered[2] first-party coverage for LISD property during two policy periods: April 2019 to 2020, and April 2020 to 2021. In May 2019 and May 2020, hailstorms allegedly caused damage to LISD's property. There is a disagreement between Insurers and LISD about the amount of covered losses Insurers should pay.

On April 20, 2022, LISD, through its counsel, sent a letter to all Insurers and Nicholas J. Cimino. The letter purported to serve as notice under Texas Insurance Code section 542A.003, and of its intent to pursue claims under sections 541, 542, and 542A of the Insurance Code. With no specificity as to date, the letter simply refers to "the hail and/or windstorm"; the letter does not identify each Insurer's liability. After alleging a laundry list of violations under the Insurance Code and discussing Insurers' right to inspect the premises, the letter stated the following in relevant part:

> Specific amount alleged to be owed:
>
> $20,000,000.00 in actual damages (less any amounts you paid, if any, and any applicable deductible).

---

[2] Although the Insurers' policies are not in the record, an abstract of coverage (from May 2019) purports to identify each Insurer's percentage of participation and layers of coverage at $10 million, $25 million, $50 million, $100 million, and $150 million. LISD stated in initial disclosures that "the first couple of layers of insurance [have] tendered a total of $10 million." Historically, an insurer that provides primary insurance coverage becomes liable upon the covered event. Liability for the excess insurers is typically not invoked until the policy limits for the primary insurers are exhausted. *See generally Union Indem. Ins. Co. of N.Y. v. Underwriters*, 614 F. Supp. 1015, 1017 (S.D. Tex. 1985).

It is likely that the damages ultimately sought at trial will be well in excess of the damages that have been identified to date because our investigation is not complete, and we do not yet know the full extent of coverages. In fact our investigation may very well lead to the conclusion that this is a policy limits claim. For example, additional amounts may be owed for damages such as cosmetic damage, matching issues, business interruption, additional living expenses, increased cost of reconstruction, code upgrades, debris removal, or other such items. These are likely available to our client in amounts far in excess of what you have agreed to pay, and will ultimately be added to the amount of damages sought once our review of the damages owed under the policy is complete.

* * *

The level of detail in this notice letter is largely the result of House Bill 1774, also known as the "hail bill," which was passed in September 2017 by the insurance lobby. It does not just apply to hail claims, but rather any lawsuit against an insurance company related to any claim for damages caused by a "force of nature." Unfortunately, it places more restrictions and hurdles on policyholders who have no choice but to sue insurance companies.

One of those hurdles is that if the damages set forth in this notice are too high, or exaggerated, the attorneys' fees our client recovers at the end of the day are reduced or eliminated. Meaning if the client guesses too high, in this notice letter, the client may not recover attorneys' fees and is not made whole. Because we do not wish to punish the client, and are duty-bound to try and make our clients whole, our initial notice of damages always errs on the side of being low and conservative.

* * *

**In other words, we cannot and will not resolve this dispute for the amount of damages and fees listed above. The figure does not necessarily include all of the damages to which our client is entitled, including damages covered under the policy, consequential damages incurred as a result of your failure to timely pay the claim, prompt payment interest, reasonable and necessary attorney's fees, and treble damages for bad faith conduct.** * * *

(emphasis added, ellipses added). On April 29, 2022, LISD sent a virtually identical written notice containing the same "specific amount alleged to be owed." Again, this notice letter provides no detail about the amounts alleged to be owed by each Insurer.

LISD filed suit on July 20, 2022. In its Rule 194.2(b) initial disclosures, LISD stated, "All indications are that the damages are in the $100,000,000.00 to $250,000,000.00

3

range." Insurers appeared in LISD's suit and filed pleas in abatement pursuant to Texas Insurance Code section 542A.005.[3] At the hearing of the Insurers' pleas, counsel for LISD stated the report from its adjusters indicated, "there's another $150 million worth of damage up here[.]" LISD's counsel explained that his reason for stating a lower amount in the notice letter is because of its possible effect on future recovery of attorney's fees,[4] and "There's no penalty [in Chapter 542A] for giving a low notice letter, okay? You could literally give a notice letter saying, 'We have $1 in damages.' We don't do that. We try to figure out what the lowest amount we could ever possibly have as damages in a case, and that's what we give as a notice letter."

On October 17, 2022, Respondent issued a letter ruling denying Insurers' pleas in abatement; he signed an order on November 1, 2022. This original proceeding followed. On the motion of Insurers, we granted temporary relief, staying all trial court proceedings pending our further order.[5] LISD subsequently filed a motion to lift stay which we have carried with the case. That motion is hereby denied as moot.

**Analysis**

Through two issues which we discuss jointly, Insurers argue Respondent abused his discretion by denying their pleas in abatement and they lack an adequate remedy by appeal. An improper refusal to grant a plea in abatement consistent with section

---

[3] TEX. INS CODE ANN. § 542A.005(a)(1) (providing an abatement procedure if a person against whom an action to which Chapter 542A applies is pending did not receive a pre-suit notice complying with Insurance Code section 542A.003).

[4] Counsel appears to be referring to TEX. INS. CODE ANN. § 542A.007(a)(3) and (b), which states one alternative means of awarding attorney's fees to the claimant.

[5] *In re Westchester Surplus Lines Ins. Co.,* No. 07-22-00329-CV, 2022 Tex. App. LEXIS 8544 (Tex. App.—Amarillo Nov. 8, 2022, orig. proceeding) (per curiam order).

542A.005 of the Insurance Code constitutes an inadequate remedy by appeal, warranting mandamus relief. *In re Allstate Indem. Co.*, No. 14-18-00362-CV, 2018 Tex. App. LEXIS 5713, at *5 (Tex. App.—Houston [14th Dist.] July 26, 2018, orig. proceeding). Therefore, our analysis here solely looks to whether Respondent clearly abused its discretion. *Id. See also In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if it makes an error of law or misapplies the law to the facts. *In re Geomet Recycling LLC*, 578 S.W.3d 82, 91 (Tex. 2019) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

"When construing a statute, our primary objective is to give effect to the Legislature's intent. We seek that intent first and foremost in the statutory text." *Colorado Cty. v. Staff,* 510 S.W.3d 435, 444 (Tex. 2017) (cleaned up). That is because "[t]he plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet v. Kimbrell,* 356 S.W.3d 407, 411 (Tex. 2011).

Section 542A.003 of the Insurance Code requires, in part, that a claimant provide the person from whom the claimant seeks damages pre-suit notice of (1) a statement of the acts or omissions giving rise to the claim; (2) the specific amount alleged to be owed by the insurer on the claim for damage to or loss of covered property; and (3) the amount of reasonable and necessary attorney's fees incurred by the claimant according to a particular formula. TEX. INS. CODE ANN. § 542A.003(b). Per statute, this notice must be given not later than the 61st day before the date the claimant files suit. TEX. INS. CODE ANN. § 542A.003(a). If a proper pre-suit notice letter is not given, then the lawsuit can be

abated for up to sixty days after proper notice is received. TEX. INS. CODE ANN. § 542A.005(a),(b),(e). This notice is intended to discourage litigation and to encourage settlements of consumer complaints. *See Mount Canaan Missionary Baptist Church v. Westchester Surplus Lines Ins. Co.*, No. 4:19-CV-00660, 2019 U.S. Dist. LEXIS 241178, at *15 (S.D. Tex. Aug. 14, 2019); *HHH Props. v. State Farm Lloyds,* No. H-18-3183, 2018 U.S. Dist. LEXIS 226520, at *2 (S.D. Tex. Nov. 30, 2018) (noting the statutory notice requirement allows the defendant-insurer a right and opportunity to make a settlement offer).

Our focus in this original proceeding is on the language in section 542A.003(b)(2), which requires LISD to state "the specific amount alleged to be owed by the insurer on the claim for damage to or loss of covered property." TEX. INS. CODE ANN. § 542A.003(b)(2). We conclude that the Legislature does not permit claimants to generally allege *any* amount of money, but to state "*the specific amount*" allegedly owed by each insurer for each claim. (emphasis added). When reviewing undefined statutory terms, "we may consider a variety of sources, including dictionary definitions, judicial constructions of the term, and other statutory definitions." *Colorado Cty.,* 510 S.W.3d at 448. *See also City of Fort Worth v. Rylie*, 602 S.W.3d 459, 467 n.19 (Tex. 2020).

The article "the" is a function word used to indicate that a following noun is definite. MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1294 (11th ed. 2003). Use of the definite article "the" with the singular noun "amount" indicates exclusivity. *See, e.g.*, *TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 709–10 (Tex. 2023) (holding, in part, that phrase giving arbitrator "the power" to determine its jurisdiction excluded others from exercising such power); *Phx. Network Techs. (Eur.) Ltd.*

*v. Neon Sys., Inc.*, 177 S.W.3d 605, 615 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding, in part, that phase "the venue" was not synonymous with "a venue" because use of the definite article showed intent to exclude other venues).[6] Use of the definite article "the" is important in section 542A.003(b)(2) because it sets the level of specificity required for proper notice (i.e., "*the* amount," "*the* insurer," and "*the* claim" for damage or loss).

Inclusion of the term "specific" offers further legislative intent about the level of detail required by section 542A.002(b)(2). "Specific" is defined as "free from ambiguity: ACCURATE." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY at 1198. Black's Law Dictionary offers a similar definition: "2. Of, relating to, or involving a particular named thing <SPECIFIC ITEM>." SPECIFIC, BLACK'S LAW DICTIONARY 1686 (11th ed. 2019). "Amount" means "the total number or quantity: AGGREGATE." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY at 42. Consistent with these definitions, we conclude the Legislature requires precision when a claimant is required to provide notice of "the specific amount" alleged to be owed by a particular insurer for a particular claim. Section 542A.003(b)(2)'s directive does not permit a claimant to equivocate, or suggest an estimate, or offer a placeholder sum that might be changed after further investigation takes place. Rather, the words require that a claimant's notice letter must clearly articulate (a) the precise sum alleged to be owed (b) by each insurer and (c) for each claim.

Reviewing LISD's notice letters reveals numerous deficiencies when held against the requirements articulated in section 542A.003(b)(2). Here are three examples. First,

---

[6] *See also, e.g., Ex parte R.P.G.P.*, 623 S.W.3d 313, 323 (Tex. 2021) (unanimously holding that language in TEX. CODE CRIM. PROC. art. 55.01(a)(2) referring to "the charge" and "the offense" indicates Legislature's intent to refer to a single offense, as opposed to "any" offense.).

while LISD's letter mentions "$20,000,000.00 in actual damages (less any amounts [Insurers] paid, if any, and any applicable deductible," the remainder of the letter equivocates on the amount owed, claiming: (a) LISD would not resolve the dispute for the stated amount, and (b) the stated amount "does not necessarily" include damages "covered under the policy" and other damages for any alleged failure to timely pay the claim. Reading the notice letter as a whole, we find that LISD is stating its claim might be for $20 million, minus something, or it might not be for $20 million after all.

This ambiguity highlights a second, related deficiency in the notice letter: this suit involves two alleged occurrences which occurred one year apart. However, the notice letters – which refer to only a single "hail and/or windstorm" – fail to articulate whether LISD intends to seek recovery from Insurers on one, or both of the events. If LISD intends to recover for both storms, its letters are further deficient because they provide no notice of the amount each Insurer owes for each claim. *See* TEX. INS. CODE ANN. § 542A.003(b)(2) (requiring claimant to state a specific amount alleged to be owed "by the insurer *on the claim*" for damages or loss).

Third, the letters' reference to a lump sum total fails to provide notice regarding the amount allegedly owed by each particular Insurer. *See id.* The record reveals that Insurers offer coverage in layers: viz., at $10 million, $25 million, $50 million, $100 million, and $150 million. An excess carrier's potential liability is only triggered after the primary insurers and all lower layers have exhausted their policy limits. *See Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pitts.*, 20 S.W.3d 692, 700–01 (Tex. 2000) (third-party

8

insurance);[7] *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 209 (5th Cir. 1996). Accordingly, if a particular Insurer is not responsible until a claim exceeds $100 million, for example, it strains reason to understand how LISD's notice letter for a claim of $20 million "less any amounts [Insurers] paid, if any, and any applicable deductible" could put such Insurer on notice of any present amount alleged to be owed.

## Conclusion

LISD's notice letters fail to comply with Insurance Code section 542A.003. TEX. INS. CODE ANN. § 542A.003. We therefore find that Respondent clearly abused his discretion and that Relators possess no adequate remedy by appeal.

We conditionally grant Insurers' petition for writ of mandamus. We direct Respondent to set aside his November 1, 2022 order and render an order abating the underlying suit until the 60th day after the date a notice complying with section 542A.003 is given. We are confident Respondent will comply, and our writ will issue only if Respondent fails to comply within fifteen days of this memorandum opinion.

Lawrence M. Doss
Justice

---

[7] "An excess liability insurer is not obligated to participate in the defense or settlement of an underlying claim until the primary policy limits are exhausted. . . . The primary policy limits are exhausted when the primary carrier tenders its policy limits." *Am. Nat'l Fire Ins. Co. v. Hammer Trucking, Inc.,* No. 02-04-00327-CV, 2006 Tex. App. LEXIS 9774, at *12 n.24 (Tex. App.—Fort Worth Nov. 9, 2006, pet. denied) (mem. op.) (citing *Keck, Mahin & Cate,* 20 S.W.3d at 700–01).